Docket No. 84057–Agenda 17–May 1998.

ROBERT McMAHAN, Appellee, v. THE INDUSTRIAL 

COMMISSION 
et al.
 (Farmer's Elevator, Appellant).

Opinion filed October 22, 1998.

JUSTICE HARRISON delivered the opinion of the court:

Claimant, Robert McMahan, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1
 et seq.
 (West 1992)) for injuries to his back sustained on May 20, 1992, while in the employ of Farmer's Elevator (employer). The arbitrator awarded claimant 13 6/7 weeks of temporary total disability (TTD), medical expenses, attorney fees under section 16 of the Act and penalties under sections 19(k) and 19(l) of the Act (820 ILCS 305/16, 19(k), (l) (West 1992)).

On review, the Industrial Commission (Commission) modified the amount of medical expenses awarded by the arbitrator and eliminated the award of attorney fees and section 19(k) penalties. One commissioner dissented, arguing that claimant is entitled to penalties under section 19(k) and attorney fees under section 16. The circuit court subsequently confirmed the Commission's decision. Claimant then appealed, challenging only the Commission's refusal to award attorney fees and section 19(k) penalties.

The Industrial Commission division of the appellate court, with one justice dissenting, affirmed in part and reversed in part, reinstating that portion of the arbitrator's decision awarding section 16 attorney fees and section 19(k) penalties. 289 Ill. App. 3d 1090. Two members of the appellate court filed a statement that the case involves a substantial question warranting consideration by the supreme court. 166 Ill. 2d R. 315(a). We granted claimant's petition for leave to appeal.

On this appeal, there is no dispute as to claimant's entitlement to temporary total disability and medical benefits. The employer is not contesting the amount of such benefits claimant is entitled to receive. There is also no dispute as to claimant's entitlement to penalties under section 19(l) of the Act or the amount of such penalties. The sole issue for our consideration is whether claimant is also entitled to an award of penalties under section 19(k) of the Act and attorney fees under section 16. For the reasons that follow, we hold that he is. We therefore affirm the appellate court's judgment, with one modification.

The pertinent facts were stated succinctly by the appellate court. At the time of his accident, claimant, then age 36, worked as a laborer doing such things as climbing, shoveling, painting, and lifting at the employer's grain elevator. Claimant began working for the employer full time in March 1990 and, although he had undergone back surgery in August 1985, he experienced very little difficulty with his back while working for the employer. Claimant admitted that he periodically experienced mild left leg pain and pain down his left foot, but said that the pain did not keep him from working.

On May 20, 1992, while attempting to shut a large gate at the elevator, claimant slipped on some loose rock and fell on his buttocks. He immediately felt a sharp pain in his left buttock that extended down his left leg to his knee. Because it was the end of the day, claimant limped to his vehicle and went home. The pain did not resolve itself, however, and claimant reported the incident the next day to his supervisor, Jenny Colburn.

On Colburn's advice, claimant went to see a doctor about his pain. The doctor gave claimant several prescription medications, but the pain did not subside. Claimant remained on the job despite the pain, although he often had to lie on a couch with a pillow under his legs when he went home after work.

On July 15, claimant returned to his chiropractor complaining of continued low-back pain on the left side. He also sought treatment from Springfield Urgent Care (Urgent Care). X rays of the lumbar spine taken on August 25, 1992, at Urgent Care revealed narrowing at the L4-L5 interspace. A computerized axial tomography (CAT) scan conducted on September 11 showed a mild posterior central bulging disc at L5-S1.

From September through October claimant underwent physical therapy three times a week during his lunch hour. When this did not work either, claimant was referred to a neurosurgeon, Dr. Russell. Claimant first saw Dr. Russell in November and was referred to Memorial Medical Center for epidural injections. The injections proved unsuccessful. Dr. Russell then recommended that claimant undergo a lumbar myelogram. The myelogram revealed an extradural defect at L4-L5 with some compression of the nerve root sleeve. Claimant was next referred to an orthopedic surgeon, Dr. Walter Baisier, who recommended surgery. Claimant did not immediately schedule surgery because of his fear of surgery and because it was harvest time, the employer's busiest time of the year.

Surgery was ultimately performed in January of 1994, when the pain had become intolerable. Dr. Baisier performed a lumbar laminectomy and diskectomy at L4-L5 on the left. Dr. Baisier opined that surgery was necessary to relieve claimant of his symptoms and that claimant's condition was causally connected to his fall of May 20, 1992. No other physician gave a contrary opinion.

Claimant's attorney contacted the employer on January 5, 1994, and requested that temporary total disability benefits commence on January 7, 1994, to coincide with claimant's having to miss work due to the back surgery. Several weeks later claimant's attorney contacted the employer again requesting that temporary total disability benefits be started and that claimant's medical bills be paid. The employer did not comply with these requests.

Jenny Colburn, claimant's supervisor, testified that claimant informed her of his accident on May 21, 1992. Colburn faxed the information to the superintendent who was in charge of workers' compensation claims for the employer. The superintendent denied any knowledge of the accident until he was contacted by the employer's attorney in March 1994. Colburn testified it was the employer's policy to take care of small workers' compensation claims internally and not to submit accident reports on such claims to the insurance company. The superintendent confirmed this practice.

By November 1992, Colburn realized claimant's condition was more serious than first believed and therefore completed an accident report that was forwarded to the insurance carrier. The carrier informed her there was a problem with coverage on the accident because the employer had not complied with its policy provisions. As a result, the carrier refused to pay any of claimant's medical bills. Colburn was also told not to pay any more of claimant's bills internally. Claimant was left to deal with those bills on his own.

Claimant initially filed an application for adjustment of claim with the Industrial Commission on April 7, 1993. When the employer refused to pay the benefits to which claimant was entitled, he filed a petition with the Industrial Commission on March 7, 1994, requesting an immediate hearing pursuant to section 19(b–1) of the Act (820 ILCS 305/19(b–1) (West 1992)). In that petition, claimant indicated his intention to seek penalties under sections 19(k) and 19(l) of the Act (820 ILCS 35/19(k), (l) (West 1992)) and attorney fees under section 16 of the Act (820 ILCS 305/16 (West 1992)).

Section 19(k) provides:

“In case [
sic
] where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award. Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay.” 820 ILCS 305/19(k) (West 1992).

Section 19(l) states:

“In case the employer or his insurance carrier shall without good and just cause fail, neglect, refuse or unreasonably delay the payment of weekly compensation benefits due to an injured employee during the period of temporary total disability the arbitrator or the Commission shall allow to the employee additional compensation in the sum of $10 per day for each day that a weekly compensation payment has been so withheld or refused, provided that such additional compensation shall not exceed the sum of $2,500. A delay in payment of 14 days or more shall create a rebuttable presumption of unreasonable delay.” 820 ILCS 305/19(l) (West 1992).

According to section 16,

“Whenever the Commission shall find that the employer, his or her agent, service company or insurance carrier has been guilty of delay or unfairness towards an employee in the adjustment, settlement or payment of benefits due such employee within the purview of the provisions of paragraph (c) of Section 4 of this Act; or has been guilty of unreasonable or vexatious delay, intentional under-payment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy, within the purview of the provisions of paragraph (k) of Section 19 of this Act, the Commission may assess all or any part of the attorney's fees and costs against such employer and his or her insurance carrier.” 820 ILCS 305/16 (West 1992).

Following a hearing, an Industrial Commission arbitrator issued a decision finding that claimant was temporarily totally disabled for a period of 13 6/7 weeks and that his disability was causally related to his injury at work on May 20, 1992. The arbitrator further held that the employer was liable for $23,477.04 in medical expenses. In addition, the arbitrator ruled that the employer's failure to pay temporary total disability benefits was “without good and just cause, vexatious and for mere purposes of harassment and delay.” Accordingly, he sustained claimant's request for penalties under sections 19(k) and 19(l) of the Act and attorney fees under section 16 of the Act. He awarded claimant $2,158.60 under section 19(k), $970 under section 19(l), and $5,558.48 in attorney fees under section 16.

The employer petitioned the Industrial Commission to review the arbitrator's decision. On review, the arbitrator's award of medical benefits had to be modified because a bill for services unrelated to claimant's work injuries had been erroneously included in the arbitrator's calculations. The actual amount of compensable medical expenses was $21,795.11, not $23,477.04. Aside from that, the only matters in dispute were the award of penalties under sections 19(k) and 19(l) and attorney fees under section 16.

The Commission agreed with the arbitrator that claimant was entitled to additional compensation of $970 under section 19(l) of the Act. It ruled, however, that the imposition of penalties under section 19(k) and the award of section 16 attorney fees were subject to “a higher standard of unreasonable and vexatious conduct” which “the facts of this case do not support.”

One member of the Commission dissented. She held that there was no dispute about claimant's entitlement to compensation and that the employer had denied compensation only because it had waited too long in advising its insurance carrier of the accident, in contravention of its statutory and contractual obligations, and would have to pay the benefits out of its own pocket. According to the dissenting commissioner, the employer's conduct in refusing to pay benefits fell within the terms of section 19(k). She would therefore have upheld the arbitrator's award of attorney fees under that statute and the award of attorney fees under section 16.

The Commission's decision was subsequently confirmed on judicial review (see 820 ILCS 305/19(f)(1), (f)(2) (West 1992)) by the circuit court of Sangamon County. Claimant appealed the circuit court's judgment to the Industrial Commission division of the appellate court. In the appellate court, as before our court now, the sole question was whether claimant should have been awarded section 19(k) penalties and section 16 attorney fees.

Citing this court's decision in 
Brinkmann v. Industrial Comm'n
, 82 Ill. 2d 462 (1980), the employer argued that section 19(k) penalties and section 16 attorney fees can only be assessed based on conduct that occurs after an award has been entered in favor of a claimant. The appellate court acknowledged 
Brinkmann
, but held that it “apparently is no longer” good law. The court further held that the decision to award section 19(k) penalties and section 16 attorney fees is a matter for the Commission's discretion. Rejecting the Commission's view that imposition of section 19(k) penalties and section 16 attorney fees requires a higher standard than an award of additional compensation under section 19(l), the appellate court ruled that the Commission had abused its discretion when it reversed the arbitrator's award of such penalties and fees to the claimant. Accordingly, the appellate court affirmed in part, reversed in part, and reinstated that portion of the arbitrator's award assessing section 19(k) penalties and section 16 attorney fees.

In its appeal to our court, the employer first argues that the appellate court was wrong to hold that 
Brinkmann
 is not fatal to claimant's entitlement to section 19(k) penalties and section 16 attorney fees. We disagree. Contrary to the employer's argument, 
Brinkmann
 does not limit the availability of such penalties and attorney fees to situations where the delay in payment occurs following entry of an award in favor of the claimant. As we noted shortly after that case was decided, 
Brinkmann
 requires only that an award eventually be entered in favor of the claimant. It does not preclude the imposition of penalties and fees where, as here, the delay in payment occurred prior to entry of the award by the arbitrator or issuance of a decision by the Commission on review. 
McKay Plating Co. v. Industrial Comm'n
, 91 Ill. 2d 198, 209 (1982); 
Board of Education v. Industrial Comm'n
, 93 Ill. 2d 20, 26 (1982) (penalties may be imposed before there has been a final award by the Commission). The point was made unambiguously by this court in 
Board of Education v. Industrial Comm'n
, 93 Ill. 2d 1, 12 (1982), where we specifically held that section 19(k) penalties and section 16 attorney fees can be imposed based on an employer's failure to pay benefits prior to an adjudication of liability. The claim that such fees and penalties must be based on an existing award of benefits, the payment of which is delayed, was rejected by our court as involving “too narrow a reading of the statutory sections involved, and too broad a reading of 
Brinkmann
.” 
Board of Education
, 93 Ill. 2d at 12.

The employer next argues that the award of section 19(k) penalties and section 16 attorney fees should be set aside because those penalties and fees were initially imposed by the arbitrator rather that the Commission itself. The employer points out that unlike section 19(l), which mentions actions by “the arbitrator or the Commission” (820 ILCS 305/19(l) (West 1992)), sections 19(k) and 16 speak of findings, assessments, and awards by “the Commission.” Arbitrators are not specifically mentioned. The employer asserts that if the legislature had intended to permit arbitrators as well as the Commission to award section 19(k) penalties and section 16 attorney fees, it would have included a reference to arbitrators in those provisions, just as it did in section 19(l).

While we cannot dispute the difference in phrasing between the statutes, we do not believe that it has the significance suggested by the employer. By including a reference to arbitrators as well as the Commission in section 19(l), the legislature contemplated that additional compensation under section 19(l) could be imposed where the proceedings ended with arbitration and were never reviewed by the Commission itself. Sections 16 and 19(k), on the other hand, presuppose that the arbitrator's award will be reviewed by the Commission, as was the case here.

Contrary to the employer's claim, the necessity for Commission review does not mean that the propriety and amount of section 19(k) penalties and section 16 attorney fees cannot be determined by the arbitrator in the first instance. Having arbitrators determine claims for section 19(k) penalties and section 16 attorney fees in addition to additional compensation under section 19(l) and disability benefits is a longstanding practice. See, 
e.g.
, 
O'Neal Brothers Construction Co. v. Industrial Comm'n
, 93 Ill. 2d 30, 36 (1982). As long as the award is reviewed by the Commission, the assessment of section 19(k) penalties and section 16 attorney fees by the arbitrator is entirely appropriate. Indeed, given how the Workers' Compensation Act is structured, any request for such penalties and fees will normally have to be presented to the arbitrator first. The reason is simple. Under the Act, arbitrators act for the Commission in hearing disputed questions of law and fact. See 820 ILCS 305/19(a) (West 1992). In most cases a claimant's entitlement to penalties and attorney fees will turn on disputed factual questions. Accordingly, any evidence the parties have in support of their respective positions must be presented to the arbitrator. If the parties wait to present their case on penalties and fees until after the arbitration is concluded, it will be too late, for the law specifically provides:

“In all cases in which the hearing before the arbitrator is held after December 18, 1989, no additional evidence shall be introduced by the parties before the Commission on review of the decision of the Arbitrator.” 820 ILCS 305/19(e) (West 1992).

As an alternative basis for challenging the award of attorney fees in this case, the employer argues that the arbitrator calculated the fee award improperly. Under the Workers' Compensation Act, attorney fees are normally limited to 20% of the amount recovered by the claimant. 820 ILCS 305/16a (West 1992). In the case before us the arbitrator took this 20% statutory rate and multiplied it times the total amount awarded to plaintiff, $27,792.40, to arrive at the fee award of $5,558.48. The problem with this calculation, according to the employer, is that the $27,792.40 award amount improperly included the $23,477.04 in medical payments due the employee. In the employer's view, section 16 attorney fees can only be awarded for delays in paying or underpaying compensation for lost wages. Such fees cannot be predicated on delays in paying or underpaying amounts for medical expenses.

The employer rests its position on 
Childress v. Industrial Comm'n
, 93 Ill. 2d 144 (1982). In 
Childress
, our court held that attorney fees should not be awarded under section 16 where the unreasonable and vexatious delay related only to the payment of medical expenses. The court's view was that section 16 fees were proper only where there was an unreasonable and vexatious delay in the payment of compensation for lost wages during the period the employer was unable to work. Because the claim of delay in that case pertained exclusively to medical expenses and did not involve compensation for lost wages, the court reversed the section 16 attorney fee award.

Childress
 is distinguishable from the present case. Here, unlike 
Childress
, the delay was not limited to payment of medical expenses. It involved the temporary total disability payments as well. Accordingly, the predicate for a section 16 attorney fee award found missing in 
Childress
 was present here.

Wholly aside from this distinction, we do not find the reasoning of
 Childress 
to be persuasive. Since it was decided in 1982, 
Childress
 has been infrequently cited by other courts, and with good reason. The court's holding in 
Childress
 was premised on an overly narrow and incorrect reading of the relevant statutory provisions.

As indicated earlier in this disposition, section 16 authorizes an award of attorney fees when the employer is

“guilty of unreasonable or vexatious delay, intentional under-payment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy, within the purview of the provisions of paragraph (k) of Section 19 of this Act ***.” 820 ILCS 305/16 (West 1992).

In rejecting the notion that a delay in paying medical expenses could trigger an award of attorney fees under this statute, the court in 
Childress
 opined that the phrase “unreasonable or vexatious delay” was qualified by the clause “within the purview of the provisions of paragraph (k) of Section 19 of this Act.” It further held that under section 19(k), the reference to “compensation” pertained solely to the payment of compensation for lost wages. In our view, both of these propositions are incorrect.

The assertion that section 16's reference to “unreasonable or vexatious delay” is qualified by the clause “within the purview of the provisions of paragraph (k) of Section 19 of this Act” is contrary to a fundamental principle of statutory construction known as the last antecedent doctrine. Under the doctrine of the last antecedent, relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding. They do not modify those which are more remote. 
In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989
, 167 Ill. 2d 161, 169 (1995). In section 16, the final qualifying phrase “within the purview of the provisions of paragraph (k) of Section 19 of this Act” is not immediately preceded by the clause “unreasonable or vexatious delay.” Two other clauses separate them. The last antecedent doctrine is therefore inapplicable, and the “unreasonable or vexatious delay” does not have to fall “within the purview of the provisions of paragraph (k) of Section 19” before section 16 attorney fees can be awarded.

In any case, we do not read section 19(k) as precluding the imposition of penalties for unreasonable and vexatious delay in paying medical expenses. Although the statute does refer to “compensation,” we believe that the legislature intended to use that term in the same way it did in section 8 of the statute. Under section 8, the amount of “compensation” an injured employee is entitled to receive for an accidental injury not resulting in death is expressly defined to include not only compensation for lost wages (820 ILCS 305/8(b) (West 1992)), but also payment for medical services (820 ILCS 305/8(a) (West 1992)).

Our conclusion is not altered by the fact that the last sentence of section 19(k) contains an explicit reference to section 8(b), dealing with lost earnings, but not to section 8(a), which is addressed to the payment of medical expenses. Section 19(k) invokes section 8(b) merely to provide a standard for defining when an employer's failure to pay will constitute unreasonable delay. The legislature could not include an analogous reference to section 8(a) in this context simply because, unlike section 8(b), section 8(a) does not include detailed schedules specifying when payments are due.

Further supporting our construction of section 19(k) is this court's decision in 
Ahlers v. Sears, Roebuck Co.
, 73 Ill. 2d 259 (1978). At issue in 
Ahlers
 was the employer's failure to make payments to the employee for medical care necessitated by an injury sustained in the course of employment. Lost earnings were not involved. Payments for the medical care were due under a settlement agreement executed by the parties and approved by the Industrial Commission. When the employer unilaterally stopped making the payments, the employee's husband and conservator filed suit under section 19(g) of the Act. That provision authorizes proceedings in circuit court to obtain judgment on arbitration awards or decisions of the Commission for the payment of “compensation.” It also mandates that an award of costs and attorney fees be included in the judgment where the employer has refused to pay “compensation” in accordance with the award or decision. 820 ILCS 305/19(g) (West 1992).

As with section 19(k), section 19(g) does not expressly refer to medical expenses. The circuit court in 
Ahlers
 nevertheless granted judgment on the Commission's decision approving the settlement agreement, which pertained solely to medical expenses, and awarded attorney fees. The appellate court affirmed, and we affirmed the appellate court, holding that the requirements of section 19(g) had been satisfied.

If the term “compensation” embraces payments for medical expenses for the purposes of section 19(g), it should also include payments for medical expenses under section 19(k). Under basic rules of statutory construction, where the same words appear in different parts of the same statute, they should be given the same meaning unless something in the context indicates that the legislature intended otherwise. 
People v. Talbot
, 322 Ill. 416, 422 (1926).

Further supporting our conclusion is the principle that no statute should be construed in a manner which will lead to consequences which are absurd, inconvenient, or unjust. 
People v. Partee
, 125 Ill. 2d 24, 30-31 (1988). The refusal of an employer to pay for an injured employee's medical expenses is as contrary to the purposes of the Workers' Compensation Act as an employer's refusal to compensate the employee for lost earnings. For the employee, the consequences can be every bit as devastating. Indeed, to the extent that nonpayment of medical expenses may imperil the employee's ability to obtain future treatment, the consequences of the employer's actions may actually be far worse. Under these circumstances, it would make no sense to say that employees should be allowed to recover their attorney fees when they are forced to retain counsel to obtain compensation for their lost earnings, but not when they have to hire a lawyer to compel payment of their medical expenses. In our view, the legislature could not have intended such an absurd and unjust result. To the extent that 
Childress
 is inconsistent with this view, it is hereby overruled.

The employer argues, in the alternative, that the appellate court was wrong to reinstate the arbitrator's award of section 19(k) penalties and section 16 attorney fees because there was adequate support for the Commission's determination that such penalties and fees were not warranted under the facts of this case. In addressing this claim, we first note our agreement with the Commission's view that imposition of section 19(k) penalties and section 16 attorney fees requires a higher standard than an award of additional compensation under section 19(l). Although all three provisions refer to unreasonable delay, the standard under section 19(l) must differ from that set forth in section 19(k) and repeated in section 16. Otherwise, whenever there was an “unreasonable delay” for purposes of section 19(l) there would automatically be an “unreasonable delay” for purposes of section 19(k). The two provisions would essentially be redundant.

Viewing the statute as a whole, we believe that section 19(k) and section 19(l) were actually intended to address different situations. The additional compensation authorized by section 19(l) is in the nature of a late fee. The statute applies whenever the employer or its carrier simply fails, neglects, or refuses to make payment or unreasonably delays payment “without good and just cause.” If the payment is late, for whatever reason, and the employer or its carrier cannot show an adequate justification for the delay, an award of the statutorily specified additional compensation is mandatory.

In contrast to section 19(l), section 19(k) provides for substantial penalties, imposition of which are discretionary rather than mandatory. See 
Smith v. Industrial Comm'n
, 170 Ill. App. 3d 626, 632 (1988). The statute is intended to address situations where there is not only a delay, but the delay is deliberate or the result of bad faith or improper purpose. This is apparent in the statute's use of the terms “vexatious,” “intentional” and “merely frivolous.” Section 16, which uses identical language, was intended to apply in the same circumstances.

While the Commission is right that a higher standard is required for section 19(k) penalties and section 16 attorney fees than for additional compensation under section 19(l), we agree with the appellate court's conclusion that such penalties and fees should have been awarded here. The employer's conduct was not the result of simple inadvertence or neglect. More was involved than a lack of good and just cause. The employer made an intentional decision not to honor its statutory obligations to the employee, and it did so simply because it had not complied with the requirements of its insurance policy and was unwilling to absorb the cost itself. Compounding the situation is that the employer's violation of its insurance policy was not accidental 

or inadvertent. It was the product of an established company policy, a policy which, as the dissenting commissioner observed, also contravened the provisions of section 6 of the Workers' Compensation Act (820 ILCS 305/6 (West 1992)). Under these circumstances, the Commission's determination that the facts do not support section 19(k) penalties and section 16 attorney fees is contrary to the manifest weight of the evidence. We further hold that it would be an abuse of discretion to refuse to award such penalties and fees under the facts present here. The appellate court was therefore correct in ordering that the arbitrator's award of section 19(k) penalties and section 16 attorney fees be reinstated.

Although reinstatement of the penalties and fees was proper, the appellate court's opinion contains an oversight which must be corrected. The $5,558.48 fee award granted by the arbitrator and reinstated by the appellate court was determined by multiplying the 20% statutory fee rate times the $27,792.40 total compensation amount awarded to claimant. This $27,792.40 compensation amount included all $23,477.04 in medical expenses awarded by the arbitrator. The problem is that the Commission subsequently determined that claimant's compensable medical expenses were only $21,795.11, a reduction of $1,681.93. The propriety of the reduction is not disputed, and the reduction should therefore have been applied to the attorney fee calculation. Taking the reduction into account, the attorney fee award to claimant should actually have been $5,222.09 (($27,792.40 - $1,681.93) x .20). Correspondingly, the appellate court's reinstatement of the fee awarded should have been limited to that sum.

For the foregoing reasons, the appellate court was correct to reverse the Commission's denial of penalties under section 19(k) and attorney fees under section 16 and to reinstate that portion of the arbitrator's decision awarding such penalties and fees. In reinstating the fee portion of the arbitrator's award, however, the appellate court should have limited the compensable amount of attorney fees to $5,222.09. Subject to that modification, the judgment of the appellate court is affirmed.

Affirmed as modified.

JUSTICE HEIPLE, specially concurring:

I agree with the majority that section 19(k) penalties and section 16 attorney fees may be awarded for conduct prior to an adjudication of liability. I write separately, however, because, rather than contort the holding of 
Brinkmann v. Industrial Comm'n
, 82 Ill. 2d 462 (1980), as done in 
McKay Plating Co. v. Industrial Comm'n
, 91 Ill. 2d 198 (1982), 
Board of Education v. Industrial Comm'n
, 93 Ill. 2d 1 (1982), and today's majority opinion, I would expressly overrule 
Brinkmann
 as wrongly decided.

Brinkmann
 expressly and unequivocally held that section 19(k) penalties and section 16 fees were “applicable 
only 
when an award has been entered in favor of a claimant and the responsible party has unreasonably delayed payment.” (Emphasis added.) 
Brinkmann
, 82 Ill. 2d at 469. 
Brinkmann
's only stated support is citation to 
Wilbon v. Industrial Comm'n
, 65 Ill. 2d 221 (1976), and 
City of Chicago v. Industrial Comm'n
, 63 Ill. 2d 99 (1976). Although these cases involved penalties and fees awarded after an adjudication of liability, nothing in either case supports a holding that penalties and fees may 
only
 be assessed after an adjudication of liability.

Brinkmann
's holding is also unsupported by the plain language of both section 19(k) and section 16. Section 19(k) states that penalties may be awarded for unreasonable or vexatious delay of payment of compensation “or [where] proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay.” 820 ILCS 305/19(k) (West 1992). Likewise, section 16 states that attorney fees may be awarded for unreasonable or vexatious delay of payment of compensation or where an employer has “engaged in frivolous defenses which do not present a real controversy.” 820 ILCS 305/16 (West 1992). Nowhere does either section require an adjudication of liability before penalties or fees may be awarded. Indeed, the language supports the opposite conclusion. Frivolous defenses made for the purposes of delay can be asserted by an employer prior to an adjudication of liability, as well as afterwards on appeal to the Commission. It would be anomalous to penalize the employer for its inappropriate conduct after an award, but not prior to it. In both cases, the employee must retain counsel and remain uncompensated simply because of the employer's unreasonable attempt to delay.

Finally, I am mindful that “[t]he doctrine of 
stare decisis
 is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion.” 
Chicago Bar Ass'n v. Illinois State Board of Elections
, 161 Ill. 2d 502, 510 (1994). However, explicitly overruling 
Brinkmann
 is not an “erratic” change in the law. In the eighteen years since 
Brinkmann
, every case interpreting 
Brinkmann
, including today's majority opinion, has eroded its holding. I would merely make explicit what this court has done implicitly for the last eighteen years.

JUSTICE MILLER, concurring in part and dissenting in part:

I do not agree with the part of the majority opinion that overrules 
Childress v. Industrial Comm'n
, 93 Ill. 2d 144 (1982), or with the majority's interpretation of section 16 of the Worker's Compensation Act. In my view, we should continue to follow 
Childress
 until the legislature changes the statutory language on which that opinion is based.

In overruling 
Childress
, the majority relies primarily on the last antecedent rule, a maxim invoked by the dissenting justice in 
Childress
. 
Childress
, 93 Ill. 2d at 152-53 (Simon, J., concurring in part & dissenting in part). That rule of statutory construction is overcome here, however, by another well-established rule: the principle that legislative acquiescence in a judicial interpretation of a statute becomes part of the statute itself and should not be lightly altered by later cases. In 
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 20-21 (1997), Justice Harrison, writing in dissent, explained the operation of this principle:

“The legislature is presumed to know the construction the courts have placed upon a statute. When it amends a statute but does not alter a previous interpretation by this court, we assume that the legislature intended for the amendment to have the same interpretation previously given. 
Williams v. Crickman
, 81 Ill. 2d 105, 111 (1980). Moreover, where the legislature has acquiesced in a judicial construction of the law over a substantial period of time, as it did here, the court's construction becomes part of the fabric of the law, and a departure from that construction by the court would be tantamount to an amendment of the statute itself. 
Charles v. Siegfried
, 165 Ill. 2d 482, 492 (1995). The power to make such amendments does not lie in the courts. 
Independent Voters v. Illinois Commerce Comm'n
, 117 Ill. 2d 90, 100 (1987).”

These same considerations compel our continued adherence to 
Childress
 and its interpretation of section 16. Like Justice Harrison in 
Berlin
, I believe that in this case “a departure from that construction by the court would be tantamount to an amendment of the statute itself.” The legislature has amended this provision of the Act three times since 
Childress
 was decided 16 years ago, in 1982, yet the legislature has chosen not to alter the language this court interpreted in its earlier decision. By now, that interpretation has become part of the “fabric of the law.” For these reasons, I would not overrule 
Childress
. Any amendments to the statute at this late date should be made by the legislature and not by this court.

Finally, I would note that, unlike 
Childress
, 
Brinkman v. Industrial Comm'n
, 82 Ill. 2d 462 (1980), was limited by this court soon after it was decided, and the legislature has not altered that limited interpretation.