Opinion Filed: March 6, 2026

Nos. 1-24-2493WC, 1-24-2521WC, cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| CONCRETE STRUCTURES OF THE MIDWEST, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Appellee and Cross-Appellant, | ) ) | |
| v. | ) ) | No. 24-L-050088 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* | ) ) ) | Honorable |
| | ) | Daniel P. Duffy, |
| (Vincent Secor, Appellant and Cross-Appellee). | ) | Judge, Presiding. |

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Rochford, Mullen, and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1    Claimant, Vincent Secor, appeals from an order of the circuit court of Cook County, confirming the decision of the Illinois Workers' Compensation Commission (Commission) on all issues except section 19(k) penalties under the Workers' Compensation Act (Act) (820 ILCS

305/19(k) (West 2022)) and section 16 attorney fees under the Act (*id.* § 16). Employer, Concrete Structures of the Midwest, cross-appeals, arguing that the Commission's awards of section 19(k) and 19(*l*) penalties (*id.* § 19(*l*)), section 16 attorney fees, permanent and total disability (PTD) benefits, temporary total disability (TTD) benefits and maintenance, and medical expenses were against the manifest weight of the evidence. For the following reasons, we affirm the decision of the circuit court setting aside the Commission's award of section 19(k) penalties and section 16 attorney fees and remand these issues to the Commission, affirm the circuit court's order confirming the Commission's award of section 19(*l*) penalties, and affirm all other aspects of the circuit court's order confirming the Commission's decision (the award of PTD benefits, TTD and maintenance benefits, and medical expenses).

¶ 2                                    I. BACKGROUND

¶ 3     As detailed below, employer forfeited review of its cross-claims on appeal for violations of the briefing requirements found in Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). See Ill. S. Ct. R. 341(i) (eff. Oct. 1, 2020) (applying Rule 341(h)(7) to appellee's briefs). Therefore, our recitation of the facts is limited to those necessary to dispose of claimant's appeal.

¶ 4     The following evidence and testimony was adduced at the September 28, 2022, arbitration hearing. Claimant, 41 years old at the time of the hearing, testified that he worked for employer as a journeyman concrete carpenter for over 20 years. Claimant's job required carrying and operating various tools, framing and pouring concrete, and consistently lifting and carrying over 100 pounds of materials. Claimant spent most workdays squatting, kneeling, and walking. On January 12, 2017, claimant was instructed to lift a manhole in the subbasin of a newly constructed building to measure air quality levels. Claimant and a coworker used rebar hooks to lift the manhole up and slide it. As they slid the manhole cover, claimant "felt something in [his] back tear." He tried to wait out the pain, but when he attempted to go to the bathroom, he realized "something [was] really going on." Claimant's foreman

eventually sent claimant home when his pain did not subside. Over the next four days, claimant did not have work due to rain and the weekend. However, claimant's pain worsened even without additional work. Claimant called his foreman, who instructed him to talk to one of employer's safety managers. The safety manager referred claimant for medical treatment.

¶ 5        On January 17, 2017, claimant reported to Dr. Smain Sadok at Southern Medical Center, complaining of lower back pain radiating into his left buttock. Dr. Sadok ordered an MRI and referred claimant to Dr. Edward Goldberg of Midwest Orthopedics at Rush University Medical Center. Dr. Goldberg diagnosed claimant with a L4-5 annular tear and a left L5-S1 herniation with left radiculopathy. He ordered physical therapy and took claimant off work. On March 17, 2017, Dr. Goldberg performed a left L4-5 and L5-S1 hemilaminectomy and discectomy. On March 20, 2017, claimant contacted Dr. Goldberg reporting trouble urinating. An MRI conducted at Rush showed fluid collection, spinal canal narrowing, moderate foraminal narrowing, and displaced adjacent *cauda equina* nerve roots. Due to claimant's post-surgical *cauda equina* syndrome, Dr. Goldberg performed an emergency irrigation and debridement of claimant's spine at L4-5. On April 17, 2017, Dr. Goldberg examined claimant and instructed claimant to remain off work and begin physical therapy. After continued numbness and tingling in claimant's bilateral lower extremities, Dr. Goldberg ceased claimant's physical therapy.

¶ 6        On August 24, 2017, claimant reported to Dr. Anis Mekhail of Parkview Orthopaedic Group for a second opinion. Dr. Mekhail referred claimant to a urologist and recommended he obtain an electromyography study. Dr. Mekhail indicated that if no other treatment worked, then he would recommend pain management and a potential spinal cord stimulator. On September 29, 2017, claimant reported to Rush University Urology complaining of trouble voiding. He underwent a bladder ultrasound and urodynamics uroflow, which led to a diagnosis of lower urinary tract symptoms and impotence. On October 20, 2017, Dr. Goldberg referred claimant to neurology. On November 16, 2017,

neurologist Dr. Armita Bijari diagnosed claimant with low back pain, saddle anesthesia, and *conus medullaris* syndrome.

¶ 7 On January 10, 2018, claimant was evaluated by Dr. Jesse Butler at employer's request. The independent medical evaluation (IME) resulted in Dr. Butler diagnosing claimant with degenerative disc disease, lumbar disc displacement, and *cauda equina* syndrome with neurogenic bladder. Dr. Butler believed claimant's condition was related to the work accident. On February 1, 2018, claimant underwent a functional capacity evaluation (FCE) with ATI Physical Therapy at Dr. Goldberg's recommendation. The FCE found claimant capable of occasionally lifting 45.6 pounds above the shoulder, occasionally lifting 36.8 pounds from desk to chair, occasionally lifting 30.2 pounds from chair to floor, occasionally carrying 47 pounds on the right or left, working 7 hours day, sitting for 3 to 4 hours during the day in 30-minute durations, standing for 3 to 4 hours during the day in 35-minute durations, and walking 4 to 5 hours per day frequently and in moderate distances. On March 5, 2018, Dr. Goldberg issued work restrictions consistent with the FCE. Employer had no work available consistent with the restrictions and claimant began formal vocational rehabilitation with Vocamotive. Joseph Belmonte of Vocamotive recommended claimant begin job training, starting with computer and keyboard training.

¶ 8 After about two months of keyboard training, claimant could type approximately 25 words per minute. Claimant testified that the vocational rehabilitation sessions were "hell." He testified that he would develop significant pain in his lower half after sitting for extended periods of time and he was often observed shifting in his seat due to the discomfort. Claimant testified he would get "tons of pain" and numbness in his buttocks, legs, groin, rectum, pelvic area, and testicles. Vocamotive noted claimant missed several sessions because of his inability to sleep at night. Claimant testified he would get two to three hours of sleep at night due to the pain.

¶ 9 On July 26, 2018, Dr. Bijari recommended claimant begin treatment with a pain management

- 4 -

specialist. Claimant began treatment four days later with Dr. Mark Farag of Midwest Anesthesia and Pain Specialists, who recommended claimant remain off work indefinitely. Claimant's vocational rehabilitation with Vocamotive ceased at that time. Dr. Farag recommended claimant undergo a psychological evaluation for a potential trial spinal cord stimulator. Claimant completed the evaluation conducted by Dr. Peter Ross Brown. On September 5, 2018, claimant underwent a psychological evaluation with Dr. Nancy Landre at employer's request. Dr. Landre concluded that claimant was distressed and anxious, and that claimant would likely see improvement with a spinal cord stimulator.

¶ 10    On September 24, 2018, claimant underwent an IME with Dr. Andrew Zelby at employer's request. Dr. Zelby diagnosed claimant with resolved herniated lumber discectomy, resolved herniated lumbosacral disc, and a history of lumbar microdiscectomy and mild lumbar spondylosis without radiculopathy. Dr. Zelby did not believe claimant had *cauda equina* syndrome or *conus medullaris* syndrome and also disagreed with claimant's FCE. As a result, Dr. Zelby placed claimant at maximum medical improvement (MMI) and opined that claimant could return to full-duty work. Claimant continued to follow up with Dr. Sarah Adelstein at Rush Urology, who recommended claimant begin using straight catheterization to urinate.

¶ 11    On March 25, 2019, Dr. Goldberg testified via evidence deposition. Dr. Goldberg diagnosed claimant as status-post left L5-S1 discectomy, status-post left L4-5 foraminotomy for his foraminal stenosis with ongoing subjective abdominal numbness, perineal numbness, and intermittent radicular symptoms. Dr. Goldberg opined that claimant's condition of ill-being was causally related to the work accident and that claimant would be a candidate for a spinal cord stimulator. Dr. Goldberg disagreed with Dr. Zelby's IME and opinion that claimant could return to full-duty work. On April 4, 2019, Dr. Zelby testified via evidence deposition consistent with his IME conclusions. On May 15, 2019, Dr. Farag testified via evidence deposition, wherein he also disagreed with Dr. Zelby's IME and opinion that claimant could return to full-duty work. On July 9, 2019, Dr. Butler testified via evidence deposition

- 5 -

consistent with his IME conclusions.

¶ 12     On July 10, 2019, Dr. Richard Noren evaluated claimant at employer's request. Dr. Noren opined that claimant was dishonest about his symptoms and inconsistently reporting them. He placed claimant at MMI and believed claimant could return to light-duty work consistent with the FCE. He further opined that claimant would not be a suitable candidate for a spinal cord stimulator. On September 3, 2019, Dr. Noren testified via evidence deposition consistent with his IME findings.

¶ 13     Laura and Joseph Belmonte of Vocamotive conducted a September 25, 2019, labor market survey. The survey concluded that claimant could find work consistent with the FCE in delivery, clerking, and attendant positions. The survey noted claimant had no experience with supervision, management, clerical and administrative work, or any form of estimating.

¶ 14     Claimant continued to follow up with providers. He began seeing a gastrointestinal specialist and was referred for pelvic floor therapy. He also began physical therapy for urinary straining. Claimant reported to the emergency room on June 24, 2020, complaining of straining during urination. Claimant underwent a transurethral incision of the prostate for a high riding bladder neck. On July 28, 2020, claimant began use of an intermittent catheter.

¶ 15     On August 3, 2020, claimant reported to Dr. Bijari, complaining of difficulty standing for more than 15 minutes and that, after the June 24, 2020, prostate surgery, he had to self-catheterize twice per day. Dr. Bijari believed claimant would not further improve and had a poor prognosis. Dr. Bijari opined that claimant could not work in any capacity.

¶ 16     On October 12, 2020, urologist Dr. Lev Elterman evaluated claimant at employer's request. Dr. Elterman related claimant's urological issues to his *cauda equina* syndrome. Dr. Elterman placed claimant at MMI and concluded that his urological complaints did not necessarily preclude claimant from work. However, Dr. Elterman noted that claimant's pain complaints and difficulty sitting, standing, and walking related to his back pain were outside his expertise. Dr. Elterman

agreed with Dr. Bijari that claimant was unlikely to improve.

¶ 17 On December 2, 2020, Dr. Bijari, again, opined that claimant would be a good candidate for a spinal cord stimulator, and on February 17, 2021, claimant began the spinal cord stimulator trial. By March 2, 2021, claimant reported feeling between 60% and 70% relief during the trial. On March 16, 2021, Dr. Bijari reiterated that claimant could never work in the future due to his ill-being. Claimant continued to complain of dysesthesia, numbness, spasms, and pain.

¶ 18 On June 8, 2021, Dr. Yousuf Sayeed provided claimant a permanent spinal cord stimulator. Claimant reported to Dr. Farag that the stimulator helped the pain but did not help him in walking or other daily activities. On August 3, 2021, Dr. Farag prescribed claimant a wheelchair.

¶ 19 Claimant testified that he continued urological, pain management, and psychological treatment. Claimant was diagnosed with post-traumatic stress disorder and testified that he struggles with depression, anxiety, anger, and sleeplessness. Claimant further testified that his rectum routinely spasms and that he needs to use a pelvic floor tool for help with bowel movements and daily self-catheterization for urination. Claimant testified that he cannot sit still for longer than 5 minutes and cannot stand for longer than 15 minutes. Claimant testified that he is in "unbearable" pain that is "past the pain scale." He can no longer shower and instead must take baths. He removed the doors in his house to ease navigating his wheelchair. He reported having to catheter himself to urinate and avoid urine buildup. Claimant testified that, if not for the accident, he intended to continue his career as a union concrete carpenter.

¶ 20 On July 6, 2023, the arbitrator issued her decision. The arbitrator awarded claimant TTD benefits, maintenance, and PTD benefits, as well as medical expenses. The arbitrator also assessed section 19(k) and section 19(*l*) penalties and section 16 attorney fees. When assessing the penalties and fees, the arbitrator reasoned that "the [employer] has the burden of demonstrating a reasonable belief that its denial of liability was justified under the circumstances" and that "the burden of

proof of the reasonableness of its conduct is upon the employer." The arbitrator found that employer's reliance on the opinions of Drs. Zelby and Noren was unreasonable because their opinions were against "multiple opinions provided by [claimant's] treating doctors and some of the Section 12 examiners, as well as the vast medical evidence showing [claimant's] ongoing and worsening conditions." The arbitrator further found that employer's reliance on Vocamotive's labor market survey was unreasonable, and the employer's delay of payments vexatious because the report "simply listed jobs without considering the fact that subsequent to the FCE, [claimant] had been forced to use a wheelchair, been catheterized, had increased pain in his lower body with even short periods of standing or walking, and had been declared permanently disabled by his treating neurologist."

¶ 21    On January 24, 2024, the Commission modified the arbitrator's decision as to TTD benefits and maintenance due to a recalculation of dates when claimant was entitled to TTD. The Commission affirmed and adopted the arbitrator's decision in all other respects.

¶ 22    On November 18, 2024, the circuit court confirmed the Commission's decision on all issues, except the award of section 19(k) penalties and section 16 attorney fees. In confirming the Commission's award of section 19(l) penalties, the court found that the Commission's conclusion that employer did not establish a reasonable justification for denial of continued payment of benefits was neither contrary to the law nor against the manifest weight of the evidence. In setting aside the Commission's award of section 19(k) penalties and section 16 attorney fees, the court found that the Commission "did not distinguish between the standards applicable to penalties under Section 19(l) and those pursuant to Section 19(k)." The court noted that the Commission "mistakenly conflated" the standards where section 19(k) and section 16 require claimant to make an affirmative showing of bad faith or improper purpose. The court determined that this error of law amounted to an abuse of discretion and set aside the awards of section 19(k) penalties and

section 16 attorney fees. Claimant timely filed a notice of appeal, and employer timely filed a notice of cross-appeal.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, claimant argues that the Commission did not apply the incorrect standard when it awarded section 19(k) penalties and section 16 attorney fees. Employer contends that the Commission's award of sections 19(k) and 19(*l*) penalties and section 16 attorney fees was against the manifest weight of the evidence. In its cross-appeal, employer argues that the Commission's awards of PTD benefits, TTD and maintenance benefits, and medical expenses were against the manifest weight of the evidence.

¶ 25    Employer's brief fails to comply with certain requirements set forth in Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), including the requirement that the appellant's brief "contain the contentions of the appellant and the reasons therefor, *with citations of the authorities *** relied on*." (Emphasis added.) See Ill. S. Ct. R. 341(i) (eff. Oct. 1, 2020) (applying Rule 341(h)(7) to appellee's briefs). As a reviewing court, we are entitled to have the issues clearly defined, relevant authority cited, and proper legal arguments presented. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5. "This court is not a repository into which a party may dump the burden of argument and research." *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 33. This court has the discretion to strike a brief for failure to comply with the supreme court rules and dismiss the appeal (*Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77) or to find arguments not supported with citations to authority waived (*TTC Illinois, Inc./Tom Via Trucking v. Illinois Workers' Compensation Comm'n*, 396 Ill. App. 3d 344, 355 (2009)).

¶ 26    Here, employer cites very little pertinent authority in its argument section. Specifically, the portions of employer's brief pertaining to PTD benefits, TTD benefits and maintenance, and medical expenses contain no citation to authority whatsoever. Such violations of the Illinois Supreme

Court's rules provide ample support for this court to exercise its discretion and strike the brief or find unsupported arguments forfeited. We choose to do so. Employer's arguments on all issues, except section 19(k) and (*l*) penalties and section 16 attorney fees, are forfeited.

¶ 27 The only issues remaining for this court to address are the Commission's award of section 19(*l*) penalties and circuit court's decision to set aside the Commission's award of section 19(k) penalties and section 16 attorney fees. Regarding the award of section 19(*l*) penalties, employer argues the Commission erred where it awarded the penalties, despite employer "reasonably [relying] on the opinions of its experts Drs. Zelby and Elterman" and "[paying] each advance recommended by the Arbitrator in a timely manner."

¶ 28 Section 19(*l*) establishes when penalties for a delay of payment can be awarded:

"(*l*) If the employee has made written demand for payment of benefits under Section 8(a) or Section 8(b), the employer shall have 14 days after receipt of the demand to set forth in writing the reason for the delay. In the case of demand for payment of medical benefits under Section 8(a), the time for the employer to respond shall not commence until the expiration of the allotted 30 days specified under Section 8.2(d). In case the employer or his or her insurance carrier shall without good and just cause fail, neglect, refuse, or unreasonably delay the payment of benefits under Section 8(a) or Section 8(b), the Arbitrator or the Commission shall allow to the employee additional compensation in the sum of $30 per day for each day that the benefits under Section 8(a) or Section 8(b) have been so withheld or refused, not to exceed $10,000. A delay in payment of 14 days or more shall create a rebuttable presumption of unreasonable delay." 820 ILCS 305/19(*l*) (West 2022).

The compensation awarded under section 19(*l*) "is in the nature of a late fee." *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 515 (1998). The section applies whenever the employer

"simply fails, neglects, or refuses to make payment or unreasonably delays payment 'without good and just cause.' " *Id.* "If the payment is late, for whatever reason, and the employer or its carrier cannot show an adequate justification for the delay, an award of the statutorily specified additional compensation is mandatory." *Id.* The employer bears the burden of proving that its delay was reasonable. *Jacobo v. Illinois Workers' Compensation Comm'n*, 2011 IL App (3d) 100807WC, ¶ 29. We review the Commission's award of section 19(*l*) penalties under the manifest weight of the evidence standard and will only find that the Commission's award is against the manifest weight if the opposite conclusion is clearly the proper result. *Id.* ¶ 28.

¶ 29    Here, the Commission's decision to award section 19(*l*) penalties was not against the manifest weight of the evidence. Employer argues that its reliance on Dr. Zelby's conclusion that claimant could return to full-duty work, Dr. Elterman's conclusion that claimant's urological symptoms did not preclude him from returning to work, and Dr. Noren's conclusion that claimant, who misreported symptoms, reached MMI and was able to return to light-duty work was reasonable. The Commission, in affirming and adopting the arbitrator's decision, disagreed and found the respective doctors' conclusions were against "multiple opinions provided by [claimant's] treating doctors and some of the Section 12 examiners, as well as the vast medical evidence showing [claimant's] ongoing and worsening conditions." The Commission further found that employer's reliance on Vocamotive's labor market survey was unreasonable because the report "simply listed jobs without considering the fact that subsequent to the FCE, [claimant] had been forced to use a wheelchair, been catheterized, had increased pain in his lower body with even short periods of standing or walking, and had been declared permanently disabled by his treating neurologist." After a thorough examination of the record, we cannot conclude that the Commission's award of section 19(*l*) penalties was against the manifest weight of the evidence.

¶ 30    Lastly, we address the decision of the circuit court setting aside the Commission's award

of section 19(k) penalties and section 16 attorney fees. Section 19(k) penalties and section 16 attorney fees address situations where there is not only delay, but the delay is deliberate or the result of bad faith or improper purpose. *Zitzka v. Industrial Comm'n*, 328 Ill. App. 3d 844, 849 (2002). The award of section 19(k) penalties and section 16 attorney fees is discretionary, rather than mandatory, and requires a higher standard than section 19(*l*) penalties. *Jacobo*, 2011 IL App (3d) 100807WC, ¶ 43; *McMahan*, 183 Ill. 2d at 514-15. A review of the Commission's decision to deny penalties and attorney fees, pursuant to sections 19(k) and 16 of the Act, involves a two-step analysis. *Jacobo*, 2011 IL App (3d) 100807WC, ¶ 24. First, we must determine whether the Commission's finding that the facts justify section 19(k) penalties and section 16 attorney fees is "contrary to the manifest weight of the evidence." *McMahan*, 183 Ill. 2d at 516. Second, we must determine whether "it would be an abuse of discretion to refuse to award such penalties and fees under the facts present here." *Id.* However, an error of law is an abuse of discretion. *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009) (" '[L]ittle turns *** on whether we label review of this particular question abuse of discretion or *de novo*, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction.' " (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996))).

¶ 31      The circuit court, in setting aside the Commission's award of section 19(k) penalties and section 16 attorney fees, found that the Commission applied the improper legal standard. We agree. The Commission, in affirming and adopting the arbitrator's decision, conflated section 19(*l*)—which shifts the burden to the employer to demonstrate its actions were reasonable—with sections 19(k) and 16 of the Act, where the burden remains on claimant to establish entitlement to the penalties and fees. The Commission reasoned that "the burden of proof of the reasonableness of its conduct is upon the employer" but did not distinguish that this burden is only applicable under section 19(*l*) and instead applied this standard to all three assessments of penalties and fees. This

conflation of legal standards is an error of law and an abuse of discretion. Therefore, we affirm the circuit court's decision to set aside the Commission's award of section 19(k) penalties and section 16 attorney fees and remand these issues back to the Commission to apply the correct standard to these statutory penalties and fees.

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, we affirm the decision of the circuit court setting aside the Commission's award of section 19(k) penalties and section 16 attorney fees and remand these issues to the Commission, affirm the circuit court's order confirming the Commission's award of section 19(*l*) penalties, and affirm all other aspects of the circuit court's order confirming the Commission's decision.

¶ 34  Affirmed and remanded.

*Concrete Structures of the Midwest v. Illinois Workers' Compensation Comm'n*,
**2026 IL App (1st) 242493WC**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-L-50088; the Hon. Daniel P. Duffy, Judge, presiding. |
| **Attorneys for Appellant:** | Tyler D. Berberich, of Horwitz, Horwitz & Associates, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Lindsay R. Vanderford, of Keefe, Campbell, Biery & Associates, LLC, of Chicago, for appellee. |