STEVEN BUNNOW, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Chicago Suburban Express, Appellee).

First District (Industrial Commission Division)   No. 1—00—3895WC

Opinion filed January 24, 2002.—Rehearing denied March 11, 2002.

1040

Kenneth B. Gore, Ltd., of Chicago (Mark A. DePaolo, of counsel), for appellant.

Meachum, Spahr, Cozzi, Postel & Earl, of Chicago (Richard S. Zenz, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The Industrial Commission (Commission) awarded the claimant, Steven Bunnow, temporary total disability (TTD) benefits and medical

expenses in connection with his application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)). The Commission also ordered the payment of attorney fees and penalties pursuant to sections 16 and 19 of the Act (820 ILCS 305/16, 19 (West 1996)), respectively, for the underpayment of TTD benefits. The circuit court of Cook County confirmed the Commission's decision. The claimant has appealed, arguing that he is also entitled to an award of attorney fees and penalties for the nonpayment of medical expenses. For the following reasons, we vacate the order of the circuit court, confirm in part and set aside in part the Commission's decision, and remand the case to the Commission with directions.

On December 2, 1996, the claimant was involved in an accident while driving a tractor owned by Champion Trucking (Champion) and hauling a trailer owned by Chicago Suburban Express (Suburban). The claimant's truck jack-knifed, fell on its side, slid into a concrete bridge, and burst into flames. It is uncontested that the claimant suffered severe injuries as a result of the accident, for which he has required extensive medical treatment.

On March 4, 1997, the claimant filed an amended application for adjustment of claim under the Act, naming both Champion and Suburban as his employers. On September 12, 1997, the claimant filed a petition seeking the payment of penalties and attorney fees for the underpayment of TTD benefits and the nonpayment of medical bills.

On January 23, 1998, an arbitrator conducted a hearing at which evidence establishing the following facts was introduced.

In December 1996, in addition to his full-time job, the claimant worked part-time driving a semi-truck for Champion, a cartage company located in Fredonia, Wisconsin. Champion hired the claimant in June or July 1995, after he responded to an advertisement in the newspaper for a line haul driver. The claimant worked two days per week for Champion hauling freight between Fredonia and Chicago, where he would deliver the freight to Suburban, which is also a cartage company. The claimant testified that, when he reported to work at Champion, he would get "the papers" for the load he would be hauling from Jennifer Moegenburg, Champion's vice-president. According to the claimant, he would then do a safety inspection on his truck, make sure the truck was properly placarded, and drive to Suburban, which he described as a "warehouse transfer point." When the claimant arrived at Suburban, he would back his truck up to the warehouse or docking area, unhook the trailer, and give his papers to Suburban's dispatcher. According to the claimant, the dispatcher would give him the papers for his return load. The claimant would then check to

make sure the truck was properly placarded, rehook the trailer, do a safety inspection, and drive back to Champion in Fredonia.

The claimant testified that it was always his understanding that Champion was his employer. Champion issued his weekly paychecks and withheld sums for the payment of taxes and social security. The claimant stated that, if Suburban gave him instructions regarding special handling of freight, he would comply with those instructions; although, he further testified that he had only received such special instructions from Suburban once, when he was told not to let a load which contained liquid freeze. According to the claimant, it was his understanding that Suburban's employees wanted his truck at their facility by 10 p.m. so they could unload it before the end of their shift. It was also the claimant's understanding that Suburban had the authority to fire him if he were driving recklessly, arrived at its facility intoxicated, or "was crummy" at his job. The claimant further testified that the manifest and bills of lading for the loads he carried contained Suburban's name.

According to the claimant, the accident at issue occurred around 11:30 p.m. on December 2, 1996, as he was driving from Chicago back to Fredonia. As no party contests the extent of the claimant's injuries or the fact that they arose from the accident in question, we will not recount the injuries he sustained or medical services he received.

The claimant testified that, since the date of the accident, he had been receiving $224 per week from Milwaukee Insurance. However, none of his medical bills had been paid. According to the claimant, he receives three letters in the mail per day regarding overdue medical bills, has stopped answering his telephone due to calls from creditors, and has received counseling to deal with financial pressures. The claimant further testified that his doctors had recommended various additional surgeries. One surgery in particular had been scheduled for the week of his deposition but was rescheduled because the doctors would not perform the surgery without guarantee of payment.

Champion's vice-president, Jennifer Moegenburg, testified that Champion had entered into a business relationship with Suburban about 10 years prior, although the two companies had no written contract. According to Moegenburg, Champion's services were initially limited to picking up freight which Suburban drivers had delivered to Milwaukee and delivering it to local Suburban customers. About three years into the business relationship, though, Suburban asked Champion to also start doing line hauls to Chicago.

The evidence established that Champion used its own tractor for the line hauls but that the trailers it hauled were owned by Suburban. Champion was paid a flat line haul fee of $250 per load plus 25% of

the total revenue of each load its drivers hauled. Champion paid for the fuel used and tolls incurred. Champion did not have its own authority to haul freight in Illinois. Consequently, Champion and Suburban entered into an equipment lease which provided in pertinent part as follows:

"Representations of Parties. Lessor [Suburban] represents that it is the owner of the equipment and has the authority to enter into this lease; that it gives the equipment over to the exclusive use, direction and control of Lessee [Champion] during periods when the equipment is operated by or for Lessee; and that it will cooperate fully with Lessee in complying with applicable statutes and regulations. Lessee represents that it is familiar with and will comply with all statutes and regulations, state and federal, regarding safety or otherwise."

The lease also provided that "this lease is subject to the provisions of the Illinois Commercial Transportation Law, as well as other provisions of the Illinois Vehicle Code, and regulations adopted thereunder. ICC lease regulations are published in 92 Ill. Adm. Code 1360." Section 1360.40(b)(1) of Title 92 of the Illinois Administrative Code provides:

"The lessee shall have exclusive possession and control of leased equipment during all periods when the equipment is operated under the lease. Such exclusive possession and control shall extend also to the drivers of leased equipment." 92 Ill. Adm. Code § 1360.40(b)(1) (amended October 12, 1993).

Both Moegenburg and Douglas Stephan, Suburban's operations manager, testified that they had not read the back of the lease, which is where the above-quoted lease provisions appear. Stephan testified that Suburban's only intention in entering into the lease was to allow Champion to operate in Illinois pursuant to Suburban's ICC authority.

Moegenburg testified that Champion had Suburban's name and ICC number painted on the doors of the tractors it used for the line hauls and that Suburban never admonished Champion not to do so. Moegenburg acknowledged that Champion is solely responsible for training its drivers, determining the drivers' routes, and maintaining its tractors. Champion also performs all employee evaluations and determines the amount of raises.

Stephan testified that Champion chooses the driver and the truck to be used for the line hauls. Stephan further testified that Suburban did not take part in the claimant's hiring, nor did it give the claimant instructions as to how to perform his job or when to arrive in Chicago. According to Stephan, if any of Suburban's customers had a request that a load be picked up at a certain time, he would pass that informa-

tion on to Champion. If a Suburban customer had a complaint about a Champion driver, Stephan would give the customer Champion's telephone number. Stephan further testified that, if a Champion driver arrived at the dock intoxicated, he would not be allowed to pick up a load and Stephan would inform Champion of the incident. Similarly, if Stephan received a complaint that a Champion driver was driving recklessly, he would turn the complaint over to Champion. Stephan testified that Suburban did not have the authority to fire the claimant.

Following the hearing, the arbitrator issued a decision finding, *inter alia*, that the claimant was an employee of Champion and that Champion did not have a borrowing/loaning employer relationship with Suburban. The arbitrator awarded the claimant TTD benefits of $450.56 per week for 41 weeks and ordered Champion to pay $777,584.57 in medical expenses. Additionally, the arbitrator ordered that "CHAMPION TRUCKING and CHICAGO SUBURBAN EXPRESS, and each of them shall pay" the claimant penalties and attorney fees in the following amounts: $4,837.87 pursuant to section 19(k) of the Act (820 ILCS 305/19(k) (West 1996)); $2,500 pursuant to section 19(*l*) of the Act (820 ILCS 305/19(*l*) (West 1996)); and $1,467.57 in attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 1996)). These penalties were for nonpayment of TTD benefits only, not medical expenses.

Champion and Suburban both filed petitions for review of the arbitrator's decision. Champion argued that the arbitrator erred in finding that Suburban was not a borrowing employer and in assessing section 19(k) penalties and section 16 fees. Suburban asserted that the arbitrator erred in assessing section 19(k) penalties and section 16 fees against it after having concluded that it was not the claimant's employer. The claimant did not file a petition for review of the arbitrator's decision. He did, however, file a statement of exceptions in which he argued that the arbitrator erred in failing to find a borrowing/lending employer relationship between Champion and Suburban. The claimant did not raise the issue of penalties and attorney fees for the nonpayment of medical expenses in his statement of exceptions.

On October 21, 1998, the Commission heard oral argument on the petitions for review. The following day, the Illinois Supreme Court issued its decision in *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 702 N.E.2d 545 (1998), in which it held that penalties pursuant to section 19(k) of the Act and attorney fees pursuant to section 16 of the Act can be awarded based on the nonpayment of medical expenses. The *McMahan* decision constituted a departure from the supreme court's earlier holding to the contrary on this same issue in *Childress*

*v. Industrial Comm'n*, 93 Ill. 2d 144, 442 N.E.2d 841 (1982). Thereafter, on December 7, 1998, before the Commission issued its decision in this case, the claimant filed a motion for reconsideration on the issue of penalties based upon *McMahan*. This motion is not contained in the record.

On December 10, 1998, the Commission issued its decision on review. The Commission found that: a borrowing/loaning employer relationship existed between Champion and Suburban; Suburban, as the borrowing employer, is primarily responsible for the payment of all compensation, medical expenses, penalties, and attorney fees; and Champion, as the loaning employer, is secondarily liable for all compensation, medical expenses, penalties, and attorney fees. In support of its conclusion that Suburban was a borrowing employer, the Commission relied upon the lease agreement between Champion and Suburban and upon the following facts: Suburban instructed the claimant as to what time he needed to arrive in Chicago; Suburban had given the claimant special delivery instructions on occasion; Suburban's name and ICC number appeared on the tractor; all trailers hauled belonged to Suburban; and Suburban had the ability to fire the claimant if he was driving recklessly or arrived for work intoxicated. The Commission left undisturbed the amount of TTD benefits and medical expenses awarded and the amount of penalties assessed pursuant to subsections (k) and (*l*) of section 19 of the Act, but modified the amount of attorney fees to be paid pursuant to section 16 of the Act, lowering it from the $1,467.57 awarded by the arbitrator to $967.57. The Commission's decision contains no discussion of the issue of penalties for the nonpayment of medical expenses.

On December 23, 1998, the claimant filed an amended motion for reconsideration on the issue of penalties and a motion to recall the Commission's decision pursuant to section 19(f) of the Act (820 ILCS 305/19(f) (West 1996)). These motions are not contained in the record.

On December 29, 1998, Suburban filed a request for summons and review in the circuit court of Cook County, which was docketed as number 98 L 51168. Thereafter, on January 7, 1999, Suburban filed before the Commission a motion to quash and strike the claimant's motion for reconsideration on the issue of penalties and his motion to recall the Commission's decision. On January 13, 1999, the claimant filed before the Commission yet another motion for reconsideration on the issue of penalties. Neither the January 7 motion nor the January 13 motion is contained in the record.

On January 26, 1999, Commissioner Michael Weaver conducted a hearing on the parties' motions, a transcript of which hearing is contained in the record. On May 7, 1999, Commissioner Weaver issued

an order granting Suburban's motion to quash and denying the claimant's motions to reconsider and his motion to recall the Commission's decision pursuant to section 19(f). In his order, Commissioner Weaver found that the Commission's December 10, 1998, order "does not contain an error on the computation of penalties" and that "the Commission lacks jurisdiction to reinstate or reconsider its Decision and Opinion on Review *** due to subsequent legal precedence [*sic*] which was not available to the Commission until after its decision was rendered." Thereafter, on May 26, 1999, the claimant filed a request for summons and review in the circuit court of Cook County, which was docketed as number 99 L 50510. On June 7, 1999, Suburban filed a request for summons and review in the circuit court, which was docketed as number 99 L 50558. The three actions for judicial review (docket numbers 98 L 51168, 99 L 50510, and 99 L 50558) were subsequently consolidated by order of the circuit court.

Before the circuit court, Suburban argued that the Commission's finding that it had a borrowing/lending employer relationship with Champion is against the manifest weight of the evidence. The claimant argued that the Commission's decision denying penalties based on the nonpayment of medical expenses is against the manifest weight of the evidence. The circuit court initially found that the claimant's petition to recall the Commission's decision pursuant to section 19(f) did not toll the time for the filing of a request for summons and review and that, accordingly, the claimant's action, which was docketed as number 99 L 50510, was untimely and did not vest the court with jurisdiction. The court went on to state, however, that, by virtue of the timely request for summons and review Suburban filed on December 29, 1998, which was docketed as number 98 L 51168, it had jurisdiction to review the entire record and could consider the claimant's contentions pursuant thereto. Ultimately, the circuit court rejected the arguments of both parties and confirmed the Commission's December 10, 1998, decision. The claimant filed the instant timely appeal.

The claimant first argues that Commissioner Weaver erred in finding that his motion to recall the Commission's December 10, 1998, decision was not a proper motion pursuant to section 19(f) of the Act and that it did not vest the Commission with jurisdiction to modify its decision.

■ Pursuant to section 19(f) of the Act, a decision of the Commission is conclusive unless a proceeding for judicial review of the decision is commenced by the filing of a request for the issuance of a summons within 20 days of the receipt of the Commission's decision. 820 ILCS 305/19(f) (West 1996). The Commission may, however, on its own motion or the motion of any party, recall its decision in order to cor-

rect "any clerical error or errors in computation" within 15 days of the receipt of the decision. 820 ILCS 305/19(f) (West 1996).

The question presented here is whether the claimant's motion to recall was properly brought pursuant to section 19(f).

■ The parties agree that the Commission awarded section 19(k) penalties based only on the amount of TTD benefits to which the claimant was entitled at the time of the award. The claimant asserts that the Commission committed a computational error because it should have computed the amount of penalties based on not only the TTD benefits to which he was entitled, but on the amount of medical expenses to which he was entitled as well. Suburban disputes the notion that the Commission's decision contained a computational error, arguing that the Commission did not simply forget to include the amount of medical expenses due the claimant when it computed section 19(f) penalties but that the Commission never intended to award penalties for the nonpayment of medical expenses. As such, it contends, the claimant's motion to recall the Commission's decision was nothing more than a motion for reconsideration of the Commission's denial of penalties for the nonpayment of medical expenses. Motions for reconsideration are not allowed by the Act and, accordingly, do not toll the time for the filing of a summons for review in the circuit court. See *Wilson-Raymond Constructors Co. v. Industrial Comm'n*, 79 Ill. 2d 45, 56, 402 N.E.2d 584 (1980); *Chambers v. Industrial Comm'n*, 132 Ill. App. 3d 891, 893, 478 N.E.2d 498 (1985).

■ The word "computation" is defined not only as the "the act or action of computing" but also as "a way or system of reckoning." Webster's Third New International Dictionary 468 (1993). In our opinion, by this definition, the term "computational error" encompasses both the use of an incorrect mathematical formula and any mistakes in performing the mathematical functions, such as addition or multiplication, needed to implement that formula. In order to determine whether the Commission made a computational error in calculating the amount of penalties, we look to section 19(k).

■ Section 19(k) of the Act provides that, where appropriate, the Commission "may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award." 820 ILCS 305/19(k) (West 1996). Thus, the formula for calculating section 19(k) penalties can be stated as: (amount of compensation payable) x .50. Our inquiry cannot end there, as we must determine what constitutes compensation.

■ In *Childress*, our supreme court held that the term "compensation," as used in both sections 16 and 19(k) of the Act, was limited to compensation due the claimant in the form of lost wages or TTD

benefits. See *Childress*, 93 Ill. 2d at 148-49. In *McMahan*, though, our supreme court overruled its prior holding and held that the term "compensation," as used in the relevant sections, is not limited to compensation for lost wages, but also includes compensation due in the form of payment of medical expenses. *McMahan*, 183 Ill. 2d at 511-14. As stated earlier, *McMahan* was decided after the Commission had conducted oral argument in the instant case but before it issued its decision. Although Suburban argues, and the circuit court found, that *McMahan* announced a new rule of law and, thus, should only be applied prospectively and not to the instant case, we cannot agree. In *Scott v. Industrial Comm'n*, 184 Ill. 2d 202, 703 N.E.2d 81 (1998), issued the same day as *McMahan*, the supreme court reversed in part the circuit court's order confirming the Commission's decision and remanded the case to the Commission with directions to, *inter alia*, reconsider the matter of penalties and fees. In doing so, the *Scott* court stated that "on remand the calculation of penalties, if any, should be guided by our recent decision in *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499 (1998), which overruled in part *Childress v. Industrial Comm'n*, 93 Ill. 2d 144 (1982)." *Scott*, 184 Ill. 2d at 221. Thus, it is clear that our supreme court intended the rule announced in *McMahan* to apply to pending cases.

Suburban, however, contends that *McMahan* is inapplicable here for yet another reason. Suburban correctly states that *McMahan* does not stand for the proposition that penalties and attorney fees must always be assessed for the nonpayment of medical expenses. It asserts that, unlike the employer in *McMahan*, its refusal to pay the claimant's medical expenses was reasonable based upon the facts in evidence. As such, Suburban contends, the Commission was justified in refusing to assess penalties against it for the nonpayment of medical expenses.

■ It is true that penalties will not be imposed in circumstances where an employer reasonably could have believed that the claimant was not entitled to compensation. *Board of Education of the City of Chicago v. Industrial Comm'n*, 93 Ill. 2d 1, 9-10, 442 N.E.2d 861 (1982); *Complete Vending Services, Inc. v. Industrial Comm'n*, 305 Ill. App. 3d 1047, 1050, 714 N.E.2d 30 (1999). However, the question of whether an employer acted unreasonably or vexatiously in declining to pay benefits under the Act or whether it acted reasonably under the circumstances is one of fact to be resolved by the Commission, whose resolution of the matter will not be disturbed on appeal unless contrary to the manifest weight of the evidence. *Roodhouse Envelope Co. v. Industrial Comm'n*, 276 Ill. App. 3d 576, 579, 658 N.E.2d 838 (1995); *Continental Distributing Co. v. Industrial Comm'n*, 98 Ill. 2d 407, 415-

16, 456 N.E.2d 847 (1983). In awarding the claimant penalties pursuant to section 19(k) of the Act and attorney fees pursuant to section 16 of the Act based on the underpayment of TTD benefits, the Commission implicitly found that Suburban's refusal to pay such benefits was unreasonable or vexatious. See 820 ILCS 305/19(k), 16 (West 1996). The trial court confirmed the Commission's decision, and Suburban has not appealed. Suburban has never contested the reasonableness of the claimant's medical expenses or that they are wholly attributable to his December 2, 1996, accident. As such, there was never any question that, if Suburban was liable to pay the claimant TTD benefits, it was also liable to pay all of the medical expenses at issue. Accordingly, if Suburban's failure to pay TTD benefits was unreasonable or vexatious, as the Commission implicitly found, so too was its failure to pay the claimant's medical expenses.

As we have determined that the rule announced in *McMahan* applies to the instant case, it follows that the formula which the Commission was required to use in calculating the claimant's section 19(k) penalties is as follows: (TTD benefits + medical expenses) x .50. The Commission, however, computed the penalty using the following incorrect formula: (TTD benefits) x .50. We find that, as the Commission used the wrong formula to calculate section 19(k) penalties, its December 10, 1998, decision contained a computational error. As such, the claimant's motion to recall was properly brought pursuant to section 19(f), and the Commission erred in denying the claimant's motion to recall its decision to correct the computational error.

For the reasons stated above, we find that the circuit court erred in confirming the Commission's decision in its entirety. As such, we: (1) vacate the circuit court's order confirming the Commission's decision in its entirety; (2) confirm the Commission's decision only with respect to the award of TTD benefits and medical expenses and to the award of section 19(*l*) penalties, which are not in dispute; (3) set aside the portion of the Commission's decision awarding the claimant section 19(k) penalties and section 16 attorney fees; and (4) remand the case to the Commission with directions that it determine the proper amount of section 19(k) penalties to which the claimant is entitled in accordance with *McMahan* and, after doing so, to assess the amount of attorney fees it deems reasonable pursuant to section 16 of the Act.

Circuit court order vacated; Commission's decision confirmed in part and set aside in part; cause remanded to the Commission with directions.

McCULLOUGH, P.J., and O'MALLEY, HOLDRIDGE, and RARICK, JJ., concur.