CENTRAL RUG AND CARPET, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (James Delricco, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—04—3136WC

Opinion filed September 30, 2005.—Rehearing denied November 10, 2005.

Steven R. Kyki, of Rusin, Maciorowski & Friedman, Ltd., and Andrew L. Rane, of Garofalo, Schreiber & Hart, Chtrd., both of Chicago, for appellant.

Peter G. Lekas, of Chicago, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On April 25, 2002, claimant, James Delricco, filed an application for adjustment of claim (02WC21936) pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)), seeking benefits from employer, Central Rug and Carpet, for a February 6, 2002, injury. On July 10, 2002, he filed a second application (02WC35410) alleging the occurrence of another work-related accident, October 1, 2001, which was prior to the accident alleged in his first application. Following a consolidated hearing, the arbitrator awarded claimant 44 weeks of temporary total disability (TTD) benefits as to claimant's first application only. Additionally, he awarded claimant $696 plus the costs of impending surgery for medical expenses and denied claimant's request for penalties and attorney fees. Both claimant and employer sought review of the arbitrator's decision.

On January 30, 2004, the Industrial Commission (Commission)[1] modified the arbitrator's decision, finding claimant entitled to penalties and attorney fees pursuant to sections 19(k), 19(*l*), and 16 of the Act (820 ILCS 305/19(k), (*l*), 16 (West 2000)). The Commission affirmed all other aspects of the arbitrator's decision. On February 25, 2004, employer sought judicial review of the Commission's decision in the circuit court of Cook County. The court confirmed the Commission's decision.

Employer appeals, arguing (1) the Commission's decision that claimant suffered an injury arising out of and in the course of his employment is contrary to law and against the manifest weight of the evidence, (2) the Commission's decision to affirm the arbitrator's

---

[1]Now known as the Illinois Workers' Compensation Commission. See Pub. Act 93—721, eff. January 1, 2005.

award of TTD benefits and medical expenses is contrary to law and against the manifest weight of the evidence, and (3) the Commission's award of penalties and attorney fees is contrary to law and against the manifest weight of the evidence. We affirm.

Claimant testified he worked for employer approximately 20 years; however, he had a break in his service and had most recently returned to work as a carpet installer with employer in April 2000. On October 1, 2000, claimant was working in employer's warehouse and was assigned to process carpeting used to fill customer orders. While attempting to locate roll numbers on the carpeting, he climbed approximately 15 feet to the top of a three-tiered rack used to store carpeting in rolls. Upon climbing down, claimant slipped and fell off the rack. He free fell for a few seconds before grabbing onto an iron railing with his left arm. Claimant felt "one big jerk" after grabbing the railing before he was able to find his footing and climb down.

After the accident, claimant noticed pain in his left arm, specifically in his elbow. The pain was not intense and felt more like a sprain. Claimant reported the accident to his immediate supervisor shortly after it occurred but continued to work that day and thereafter. Claimant did not seek treatment for the pain in his elbow until November 6, 2000, during a routine physical examination at the Veterans Administration (VA) Hospital. At that time, he was seen by a nurse who prescribed ibuprofen and his elbow was X-rayed, revealing the presence of mild degenerative changes.

On March 12, 2001, claimant again visited the VA Hospital, and medical records indicate he was referred to the orthopedic clinic. On April 24, 2001, claimant was examined by an orthopedic surgeon who diagnosed him with chronic medial elbow epicondylitis. The surgeon determined no injections were necessary and claimant "should improve over three months."

On June 19, 2001, defendant began seeing Dr. Jeffrey Visotsky, an orthopedic surgeon, who also diagnosed him with medial epicondylitis. Following an examination, Dr. Visotsky noted claimant's left elbow had tenderness along the medial epicondylar, an area where muscle attaches to bone. He then recommended conservative treatment for claimant consisting of ice, anti-inflammatory medication, and a structured rehabilitation program. Additionally, he administered Celestone and lidocaine injections. Claimant testified he felt relief after the injections; however, his pain never went away completely. Further, claimant occasionally complained to his supervisor about the pain he was experiencing in his arm.

On February 6, 2002, claimant was assigned to "restretch" the carpeting in a three-bedroom condominium. The job required him to

move furniture around and use certain tools that would take the loose-ness and "waves" out of the carpet. Upon arriving at the job, defendant noticed the condominium contained a large amount of furniture and called his supervisor to request help. The supervisor was unable to send anyone and claimant proceeded with the job by himself. At some point, claimant attempted to move a grand piano and "pulled something" in his left arm. He testified "[i]t felt like [his] elbow was loose from the joint." Claimant also reported this incident to his supervisor.

On February 8, 2002, claimant returned to see Dr. Visotsky for persistent elbow pain but did not tell him about the February 6, 2002, accident. In addition to his elbow pain, the medical records reveal claimant reported some episodic numbness and tingling. Dr. Visotsky gave claimant another injection and again prescribed anti-inflammatory medication and ice. While the injections claimant received prior to the February accident eased his pain, the second injection, received after that incident, did not have the same effect. Further, claimant testified his pain after February 6, 2002, was more persistent and he sought medical care more frequently. Additionally, claimant's supervisor testified that claimant's complaints "got greater" after the February accident and he "complained constantly."

On April 5, 2002, Dr. Visotsky ordered a magnetic resonance imaging (MRI) of claimant's left elbow and changed his anti-inflammatory medication. The MRI showed a small tear of the medial epicondylar area. On April 19, 2002, Dr. Visotsky examined claimant again and recommended surgery. Eventually, he placed claimant on light-duty work restrictions; however, employer did not have any light-duty positions available and claimant was unable to work at all.

Although claimant was scheduled for surgery on April 29, 2002, it was cancelled because employer's insurance carriers would not cover the costs. Dr. Visotsky examined claimant again in June and September 2002 and continued to recommend surgery and classify him as being on light-duty work restrictions. Further, Dr. Visotsky testified claimant's October accident could have caused his medial epicondylitis and the February accident could have aggravated or accelerated that injury.

On May 24, 2002, Dr. Robert Schenck conducted an independent medical examination of claimant. Schenck testified claimant gave him a history of both the October and February accidents and described subsequent left elbow pain with respect to both. He stated the MRI findings could have been present in the absence of a traumatic event on February 6, 2002, and found no evidence in claimant's records of an objective change in his physical condition after that date. Further,

Dr. Schenck opined that the February incident did not alter claimant's condition in any way because his records contained ongoing complaints of pain after his earlier accident and claimant failed to report the February incident to Dr. Visotsky.

Claimant filed an application for adjustment of claim for each of his alleged accidents. After a hearing, the arbitrator determined claimant suffered two accidents which arose out of and occurred in the course of his employment. However, he found claimant failed to prove his current condition of ill-being was causally related to the October accident because the February accident was an independent, intervening accident that broke the chain of causation. The arbitrator then found a causal link between claimant's current condition and the February accident and awarded claimant TTD benefits and medical expenses. Additionally, the arbitrator denied claimant's request for penalties and attorney fees, stating they were inappropriate because employer presented a good-faith defense.

Both parties appealed the arbitrator's decision. The Commission, with one commissioner dissenting, modified only the portion of the arbitrator's decision dealing with claimant's request for penalties and attorney fees, and otherwise affirmed. It found employer's conduct was unreasonable and vexatious and awarded penalties and attorney fees pursuant to sections 19(k), 19(*l*), and 16 of the Act (820 ILCS 305/ 19(k), (*l*), 16 (West 2000)). Additionally, the Commission stated as follows:

> "Based on the entire record the Commission finds [employer's] liability for [claimant's TTD] and medical benefits was clear, and that these benefits were primarily denied because [employer's] two insurance carriers could not determine which one was responsible therefor."

The Commission, citing *Bunnow v. Industrial Comm'n*, 327 Ill. App. 3d 1039, 765 N.E.2d 467 (2002), went on to state that, on similar facts, it has awarded penalties and attorney fees and the appellate court has affirmed such an award. The dissenting commissioner disagreed, finding employer made a good-faith challenge to liability based upon reasonable medical opinion.

On February 25, 2004, employer filed a request for judicial review. On September 15, 2004, the circuit court confirmed the Commission's decision in its entirety. This appeal followed.

Employer argues that the Commission's finding that claimant suffered an injury arising out of and in the course of his employment on February 6, 2002, is contrary to law and against the manifest weight of the evidence. Specifically, it contends that no new second accident occurred in this case on February 6, 2002, and claimant merely

experienced a manifestation of symptoms from a preexisting injury. Additionally, it contends that because claimant did not suffer a second injury, his current condition of ill-being is not causally connected to the February 6, 2002, incident.

■ To receive compensation under the Act, a claimant must prove, by a preponderance of the evidence, that he suffered a disabling injury that arose out of and in the course of his employment. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203, 797 N.E.2d 665, 671 (2003). " 'In the course of employment' refers to the time, place and circumstances surrounding the injury." *Sisbro*, 207 Ill. 2d at 203, 797 N.E.2d at 671. Alternatively, the "arising out of" element refers to the causal connection between the accident and the claimant's injury. *Sisbro*, 207 Ill. 2d at 203, 797 N.E.2d at 672. An injury arises out of the employment if it "had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." *Sisbro*, 207 Ill. 2d at 203, 797 N.E.2d at 672.

Generally "[e]very natural consequence that flows from the injury which arose out of and in the course of the claimant's employment is compensable under the Act." *Teska v. Industrial Comm'n*, 266 Ill. App. 3d 740, 742, 640 N.E.2d 1, 3 (1994). However, an independent, intervening accident breaks the chain of causation between a work-related injury and an ensuing disability or injury. *Teska*, 266 Ill. App. 3d at 742, 640 N.E.2d at 3.

■ Additionally, the aggravation or acceleration of a preexisting condition caused by an accident occurring in the course of employment is a compensable injury under the Act. *Caterpillar Tractor Co. v. Industrial Comm'n*, 92 Ill. 2d 30, 36, 440 N.E.2d 861, 864 (1982). Whether a claimant's condition is attributable to a preexisting condition or an aggravation of that condition caused by employment is a question of fact for the Commission. *Sisbro*, 207 Ill. 2d at 205-06, 797 N.E.2d at 673.

■ Factual determinations of the Commission will only be overturned if they are against the manifest weight of the evidence. *Franklin v. Industrial Comm'n*, 211 Ill. 2d 272, 279, 811 N.E.2d 684, 689 (2004). If the record provides an adequate basis for the Commission's finding that a claimant's employment activity aggravated or accelerated a preexisting condition, the Commission's decision must be confirmed. *Sisbro*, 207 Ill. 2d at 215, 797 N.E.2d at 665. Additionally, the resolution of conflicts in medical testimony is within the province of the Commission. *Sisbro*, 207 Ill. 2d at 206, 797 N.E.2d at 673.

■ In this case, the arbitrator concluded claimant suffered a compensable injury as a result of a work accident on February 6, 2002, that was causally connected to his present condition of ill-being. In

reaching this decision he relied upon medical records and the testimonies of claimant, his supervisor, and Dr. Visotsky. The Commission affirmed this portion of the arbitrator's decision without making further comment.

The Commission's decision is not against the manifest weight of the evidence. The record supports a finding that the February accident was an independent, intervening accident that broke the chain of causation between the claimant's original work-related injury and his current condition of ill-being.

First, the frequency and immediacy of claimant's medical treatment following each accident demonstrate that his injury was aggravated by the February accident. When claimant was initially injured on October 1, 2000, he did not seek medical treatment until more than a month later and only sought treatment a total of four times within the 16-month period between his October and February accidents. Alternatively, two days after the February accident claimant visited Dr. Visotsky and was examined by him a total of five times in the nine months that followed.

Following the February accident, claimant also complained about the pain in his arm more often and reported new and different symptoms. Immediately after the February accident, claimant felt a numbness and tingling in his arm, symptoms he had not previously reported.

Claimant received injections in his arm from Dr. Visotsky in June 2001, which eased his pain. In his deposition testimony, Dr. Schenck testified claimant described lasting relief following those first injections. Further, within a relatively short amount of time after the February accident, surgery was recommended by Dr. Visotsky and claimant was placed on work restrictions. Prior to the February accident, claimant worked continuously and treatment for his injury had been conservative.

Although Dr. Schenck opined the February incident could not have aggravated or accelerated claimant's condition, his testimony was directly contradicted by Dr. Visotsky. Dr. Visotsky believed claimant's October accident was the cause of his present condition and the February accident could have, and as he believed, did, aggravate that condition. As stated, the resolution of conflicts in medical opinions is within the province of the Commission. The Commission relied upon the testimony of Dr. Visotsky. Such a finding is supported by the record.

Here, evidence demonstrates claimant suffered an accident at work on February 6, 2002, that is causally related to claimant's current condition of ill-being. The Commission's affirmance of the arbitrator's decision was not against the manifest weight of the evidence.

■ Employer further contends the Commission's decision to affirm the arbitrator's awards of medical expenses and TTD benefits is against the manifest weight of the evidence. However, with regard to these issues, employer only argues the awards were improper because the Commission's finding that claimant suffered an injury arising out of and in the course of his employment on February 6, 2002, was against the manifest weight of the evidence. Employer's arguments as to medical expenses and TTD benefits are rejected.

■ Finally, employer argues in his brief that the Commission's award of penalties and attorney fees pursuant to sections 19(k), 19(*l*), and 16 of the Act (820 ILCS 305/19(k), (*l*), 16 (West 2000)) is against the manifest weight of the evidence. Specifically, employer contends it had good cause for disputing the compensability of claimant's workers' compensation claim and thus the imposition of penalties and attorney fees was unwarranted.

Pursuant to sections 19(k), 19(*l*), and 16 of the Act, a claimant may be awarded penalties and attorney fees as a result of certain employer conduct. 820 ILCS 305/19(k), (*l*), 16 (West 2000).

A higher standard is required for the imposition of section 19(k) penalties and section 16 attorney fees than an award of additional compensation under section 19(*l*). *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 514, 702 N.E.2d 545, 552 (1998). Section 19(*l*) compensation is in the nature of a late fee and its imposition is mandatory when an employer or insurance carrier is late in making a payment but cannot provide adequate justification for its delay. *McMahan*, 183 Ill. 2d at 515, 702 N.E.2d at 552. Alternatively, section 19(k) penalties and section 16 attorney fees are discretionary and "intended to address situations where there is not only a delay, but the delay is deliberate or the result of bad faith or improper purpose." *McMahan*, 183 Ill. 2d at 515, 702 N.E.2d at 553.

"[A]n employer's reasonable and good-faith challenge to liability ordinarily will not subject it to penalties under the Act." *Matlock v. Industrial Comm'n*, 321 Ill. App. 3d 167, 173, 746 N.E.2d 751, 756 (2001). Further, penalties are generally not imposed when there are conflicting medical opinions or when an employer acts in reliance upon responsible medical opinion. *Matlock*, 321 Ill. App. 3d at 173, 746 N.E.2d at 756.

In *Bunnow*, 327 Ill. App. 3d at 1041-44, 765 N.E.2d at 469-71, the First District case cited by the Commission, two separate employers disputed liability, each contending claimant was an employee of the other; however, neither contested that claimant suffered severe injuries from a work-related accident. The Commission awarded the claimant penalties and attorney fees, finding unreasonable or vexa-

tious conduct for failure to pay TTD benefits. *Bunnow*, 327 Ill. App. 3d at 1049, 765 N.E.2d at 475. The First District additionally awarded penalties and attorney fees for failure to pay medical expenses, reasoning that if the Commission found unreasonable or vexatious conduct for failure to pay TTD benefits, such a failure with regard to medical expenses must also be unreasonable or vexatious. *Bunnow*, 327 Ill. App. 3d at 1049, 765 N.E.2d at 475.

Although not directly on point, this case is instructive. In *Bunnow*, the Commission awarded penalties and attorney fees for failure to pay TTD and medical expenses where the ultimate liability of an employer was clear and the only dispute was over who was responsible for paying the claimant benefits. Similarly, in this case, the Commission found employer's liability to be clear and that the only dispute was over which insurance carrier was responsible for paying claimant benefits. The Commission's findings and award of penalties and attorney fees were not against the manifest weight of the evidence.

The record suggests that the real disputed issue was which accident subjected employer to liability, not whether employer was liable at all. Employer had two insurance carriers, one potentially responsible for paying benefits pursuant to the October accident and the other potentially responsible for benefits in connection with the February accident. Each carrier contested liability and refused to pay.

As a result of this dispute, the focus of depositions taken in this case was the severity of claimant's injury both prior to and after the February accident and whether that accident was merely the manifestation of symptoms connected to an earlier injury or an aggravation of a preexisting condition. In its brief to this court, employer states it "had good cause for disputing compensability *** based on [claimant's] continued complaints and medical treatment for the same condition after the October 1, 2000 injury as well as the lack of medical information to support a second injury on February 6, 2002." The proceedings also include a brief filed by the employer, as to the October 1, 2000, injury, requesting this court to affirm the trial court's order which confirmed the Commission's decision.

As stated, the only disputed issue was which of employer's two insurance carriers was responsible for paying claimant benefits, not employer's ultimate liability. The Commission determined liability was clear and awarded penalties and attorney fees for unreasonable or vexatious delay. The Commission's award is not against the manifest weight of the evidence.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

HOFFMAN, CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.