# Illinois Official Reports

## Appellate Court

> ### *Sigcho-Lopez v. Illinois State Board of Elections*, 2021 IL App (1st) 200561

| | |
|---|---|
| Appellate Court Caption | BYRON SIGCHO-LOPEZ, Petitioner, v. THE ILLINOIS STATE BOARD OF ELECTIONS and 25TH WARD REGULAR DEMOCRATIC ORGANIZATION, Respondents. |
| District & No. | First District, Fifth Division<br>No. 1-20-0561 |
| Filed | April 9, 2021 |
| Decision Under Review | Petition for review of order of Illinois State Board of Elections, No. 19-CD-094. |
| Judgment | Affirmed. |
| Counsel on Appeal | Adolfo Mondragón, of Mondragon Law Group, LLC, of Chicago, for petitioner.<br><br>Michael C. Dorf, of Law Offices of Michael C. Dorf, LLC, of Skokie, for 25th Ward Regular Democratic Organization.<br><br>No brief filed for other respondent. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Cunningham and Rochford concurred in the judgment and opinion.

## OPINION

¶ 1     The petitioner, Byron Sigcho-Lopez, filed this administrative review proceeding from a final order of the Illinois State Board of Elections (Board), dismissing his complaint that alleged a violation of article 9 of the Election Code (campaign disclosure statute) (10 ILCS 5/9-1 *et seq.* (West 2018)) by the 25th Ward Regular Democratic Organization (Committee), a political committee (see 10 ILCS 5/9-1.9 (West 2018)) registered with the Board pursuant to section 9-3 of the campaign disclosure statute (10 ILCS 5/9-3 (West 2018)). For the reasons that follow, we affirm the decision of the Board.

¶ 2     The following factual scenario necessary to our resolution of this matter is taken from the exhibits and pleadings introduced and filed during the proceedings before the Board and its hearing officer, the report of the hearing officer, and the admissions contained in the parties' briefs before this court. The facts related herein are essentially uncontradicted.

¶ 3     The Committee was formed with the filing of its statement of organization as required by section 9-3 of the campaign disclosure statute (10 ILCS 5/9-3 (West 1998)). The Committee's stated purpose is supporting the candidacy of Daniel Solis to elected office. As of February 19, 2020, the date of a hearing before the Board, the Committee remained active.

¶ 4     Solis served as the alderman and Democratic committeeman of Chicago's 25th ward. Beginning in June 2016, while serving as alderman and committeeman, Solis began cooperating with the Federal Bureau of Investigation (FBI) and the United States Department of Justice (DOJ) in their investigation of alleged political corruption. Acting at the direction of the FBI and DOJ, he recorded conversations with other public officials.

¶ 5     On November 24, 2018, Solis announced his intention to retire as alderman of the 25th ward, and he did not run for reelection as alderman in 2019 or for Democratic committeeman in 2020. Sigcho-Lopez succeeded Solis as alderman of the 25th ward and was sworn in to that office on May 20, 2019.

¶ 6     On May 21, 2019, the Committee paid $220,000 for legal fees incurred by Solis. On October 17, 2019, Sigcho-Lopez filed a verified complaint with the Board alleging that the Committee violated section 9-8.10(a)(3) of the campaign disclosure statute (10 ILCS 5/9-1.9 (West 2018)) by paying Solis's legal fees. The complaint asserted that "[t]he expenditure of May 21, 2019, in the amount of $220,000, to the law firm of Foley & Lardner LLP for the criminal defense of Solis against federal allegations of corruption violates Sec. 9-8.10(a)(3)." Sigcho-Lopez alleges in his brief filed in the instant action that the Committee's payment was for "legal fees owed for defending Daniel Solis *** against allegations of public corruption." According to the complaint, the $220,000 payment by the Committee was "for a personal debt that is neither campaign-related nor for governmental or political purposes directly related to a candidate's or public official's duties and responsibilities."

¶ 7     A closed hearing was held on the complaint before a hearing officer appointed by the Board. Following that hearing, the hearing officer issued a written report on January 14, 2020, containing his suggested findings of fact and recommendations. In that report, the hearing officer found, *inter alia*, the following: "money spent on legal fees such as in this case can have a political annotation to them" and "money spent on defenses as presented in this case can be an acceptable use of campaign funds." As a consequence, the hearing officer recommended that Sigcho-Lopez's complaint "be found not to have been filed on justifiable grounds and [the] ***complaint be dismissed." On February 18, 2020, the Board's general counsel sent a memorandum to the Board in which he stated that he had read the hearing officer's report and concurred with the recommendations contained therein.

¶ 8     On February 19, 2020, the Board, in closed session, heard arguments from the attorneys representing Sigcho-Lopez and the Committee. Following those arguments, the eight members of the Board unanimously voted to dismiss Sigcho-Lopez's complaint. On March 19, 2020, in open session, the Board issued its written "Final Order on Complaint," adopting the recommendations of its general counsel and the hearing officer and dismissing Sigcho-Lopez's complaint, finding that the complaint was not filed on justifiable grounds. Sigcho-Lopez timely filed the instant petition for administrative review of the Board's final order.

¶ 9     The Board is an administrative agency (*Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008)), and the review of its decisions is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)). 10 ILCS 5/9-22 (West 2018). The scope of our review extends to all questions of law and fact presented by the record. 735 ILCS 5/3-110 (West 2018).

¶ 10    Decisions of an administrative agency such as the Board must contain sufficient findings to allow for a judicial review. *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 242 (2009). The Board's final order in this case contains no specific findings. However, when, as in this case, the Board's final order states that the Board read the hearing officer's report, which contains a detailed explanation for finding that Sigcho-Lopez's complaint was not filed on justifiable grounds, and that the Board adopted the recommendations of the hearing officer and its general counsel, we are able to meaningfully conduct our review by reviewing the reasons for dismissing the complaint stated in the hearing officer's report. See *id.* at 243.

¶ 11    Before addressing the merits of Sigcho-Lopez's arguments, we must first determine our standards of review. We consider the Board's findings and conclusions of fact to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2018). Its findings on questions of fact will be reversed only if they are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210. We interpret the campaign disclosure statute *de novo*, employing the same basic principles of statutory construction applicable to statutes generally. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶¶ 20-21; *Cinkus*, 228 Ill. 2d at 211. The Board's application of a rule of law to established or admitted facts is a mixed question of fact and law that will not be disturbed on review unless it is clearly erroneous. *Cinkus*, 228 Ill. 2d at 210-11. A decision of an administrative agency such as the Board is clearly erroneous when the reviewing court is left with the definite and firm conviction that an error has been committed. *Id.* at 211.

¶ 12    In urging reversal, Sigcho-Lopez argues first that "[t]he Committee's use of $220,000 in campaign funds to pay for Solis's criminal defense is prohibited as a matter of law by section

9-8.10(a) of the Campaign Disclosure Act because the use of campaign funds is not an 'expenditure' as defined by section 9-1.5(a) of the Campaign Disclosure Act." We find the argument somewhat circular. Section 9-8.10(a) of the campaign disclosure statute sets forth 11 categories of "expenditures" that a political committee "shall not make." 10 ILCS 5/9-8.10(a) (West 2018). Section 9-1.5(A)(1) of the campaign disclosure statute defines "expenditure." 10 ILCS 5/9-1.5(A)(1) (West 2018). Sigcho-Lopez appears to be arguing that the Committee's $220,000 "expenditure" violates section 9-8.10(a) of the campaign disclosure statute because it is not an "expenditure." Aside from our difficulty with the framing of the issue, we will, nevertheless, address the two components of the argument.

¶ 13    In relevant part, section 9-1.5(A)(1) of the campaign disclosure statute defines an "expenditure" as "a payment, distribution, purchase, loan, advance, deposit, gift of money, or anything of value, in connection with the nomination for election, election, or retention of any person to or in public office or in connection with any question of public policy." 10 ILCS 5/9-1.5(A)(1) (West 2018). The hearing officer found that "money spent on legal fees such as in this case can have a political annotation to them, because if Mr. Solis was convicted he would no longer be able to run for certain local offices and it could impact his chances of being elected in the future." We agree.

¶ 14    Section 3.1-10-5(c) of the Illinois Municipal Code provides, in relevant part, that "[a] person is not eligible to take the oath of office for a municipal office if that person ***, at the time required for taking the oath of office *** has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." 65 ILCS 5/3.1-10-5(b) (West 2018); see also *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481 (2007). If, as Sigcho-Lopez has alleged, the legal fees paid by the Committee were incurred by Solis in defense of allegations of criminal conduct, then, if convicted, Solis might no longer be able to run for public office such as alderman. We conclude, therefore, that the Committee's payment of Solis's legal fees can fall within section 9-1.5(A)(1)'s definition of an "expenditure."

¶ 15    In a related argument, Sigcho-Lopez contends that the Committee's payment of Solis's legal fees was not an "expenditure" within the meaning of that term as defined in section 9-1.5(A)(1) of the campaign disclosure statute because the undisputed evidence demonstrated that Solis had retired from public office before the Committee paid his legal fees. We reject the argument for two reasons. First, Sigcho-Lopez cited no authority in support of the argument, resulting in its forfeiture. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *TTC Illinois, Inc./Tom Via Trucking v. Illinois Workers' Compensation Comm'n*, 396 Ill. App. 3d 344, 355 (2009). Second, the proper date for determining whether a payment by a political committee was made in connection with the nomination for election, election, or retention of any person to or in public office is the date upon which the services were rendered, not the date that payment for the services is made. If Sigcho-Lopez's argument were correct, a political committee could not pay for legitimate expenses incurred by a candidate for public office after the candidate lost his or her election.

¶ 16    Sigcho-Lopez has also argued that the Committee's payment of Solis's legal fees constituted a prohibited expenditure under section 9-8.10(a)(3) of the campaign disclosure statute. As noted earlier, section 9-8.10(a) lists 11 categories of expenditures that political committees registered with the Board are prohibited from making. Legal fees are not specifically included within any of the categories. As the Committee correctly argues, the enumeration of exceptions in a statute is considered to be an exclusion of all other exceptions.

- 4 -

*Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 17. It follows, therefore, that the payment of legal fees by a political committee is not a *per se* prohibited expenditure. The question remains, however, whether the Committee's payment of Solis's legal fees as alleged by Sigcho-Lopez was a prohibited expenditure under any of the enumerated categories set forth in section 9-8.10(a) of the campaign disclosure statute.

¶ 17　　The only enumerated category of prohibited expenditures that Sigcho-Lopez has alleged was violated by the Committee's payment of Solis's legal fees is the category of expenditures set forth in section 9-8.10(a)(3) of the campaign disclosure statute, which provides, in relevant part, as follows:

> "§ 9-8.10. Use of political committee and other reporting organization funds.
>
> 　(a) A political committee shall not make expenditures:
>
> 　　　　　　　　　　　* * *
>
> 　(3) For satisfaction or repayment of any debts other than loans made to the committee or to the public official or candidate on behalf of the committee under a credit agreement. Nothing in this Section authorizes the use of campaign funds to repay personal loans." 10 ILCS 5/9-8.10(a)(3) (West 2018).

¶ 18　　Construed literally, section 9-8.10(a)(3) appears to prohibit the satisfaction or repayment of all debts of every name and nature except those specifically exempted. The hearing officer, however, found that the term "debts" as used in the statute does not refer to all debts "but only debt[s] from personal loans." Sigcho-Lopez contends that, "[u]nder a reasonable reading of subsection 9-8.10(a)(3), the word 'debts' does not refer to 'all debts' but only 'personal debts.' " The Committee agrees.

¶ 19　　Whether the term "debts" as used in section 9-8.10(a)(3) of the campaign disclosure statute refers only to personal loans as found by the hearing officer, or personal debts as the parties assert, is a matter of statutory construction. In interpreting a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). The best indication of the legislative intent is the language of the statute itself. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). "Where the language of a statute is clear and unambiguous, a court must give it effect as written without 'reading into it exceptions, limitations or conditions that the legislature did not express.' " *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 378 (1996) (quoting *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994)). If the statute is ambiguous, we give substantial weight and deference to its interpretation by the agency charged with its administration if the interpretation is defensible. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL App (1st) 150425, ¶ 19; *Quality Saw & Seal, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 776, 781 (2007).

¶ 20　　The language of section 9-8.10(a)(3) of the campaign disclosure statute does not limit its proscription to the payment of personal loans as the hearing officer found or personal debts as the parties contend; rather, it speaks in terms of "any debts." In interpreting the statute, we are guided by the principle that "statutes should be construed, if possible, so that effect may be given to all of their provisions; so that no part will be inoperative or superfluous, void or insignificant; and so that one section will not destroy another." *In re Estate of Wilson*, 238 Ill. 2d 519, 561 (2010).

¶ 21    Section 9-8.10(c) of the campaign disclosure statute provides that "[n]othing in this Section prohibits the expenditure of funds of a political committee controlled by an officeholder or by a candidate to defray the customary and reasonable expenses of an officeholder in connection with the performance of governmental and public service functions." 10 ILCS 5/9-8.10(c) (West 2018). Giving effect to both section 9-8.10(a)(3) and section 9-8.10(c) leads us to conclude that the word "debts" in section 9-8.10(a)(3) does not refer to all debts but only debts of a personal nature that do not defray the customary and reasonable expenses of an officeholder in connection with the performance of governmental and public service functions. Our conclusion in this regard is supported by the legislative history underlying the statute. As the Committee has pointed out, in response to questions from fellow legislators, Representative Jack Kubik, the floor manager of House Bill 672, later Public Act 90-737 (eff. Jan. 1, 1999), which created section 9-8.10 of the campaign disclosure statute, stated, "Representative, what we're trying to accomplish here is to restrict the use of money for strictly personal use." 90th Ill. Gen. Assem., House Proceedings, May 22, 1998, at 179 (statements of Representative Kubik).

¶ 22    We agree with the parties' assertions that the term "debts" as used in section 9-8.10(a)(3) is reasonably interpreted to refer only to personal debts and reject the hearing officer's interpretation that the term refers only to debts for personal loans. The second sentence of subsection (3) of section 9-8.10(a) refers specifically to the use of campaign funds to repay "personal loans." If, as the hearing officer found, the prohibition contained in the first sentence of subsection (3) against a political committee's expenditure of funds in satisfaction or repayment of any debts refers only to the satisfaction or repayment of personal loans, the second sentence in that subsection is superfluous.

¶ 23    Having found that section 9-8.10(a)(3) of the campaign disclosure statute prohibits only a political committee's expenditures for satisfaction or repayment of personal debts and not the payment of debts incurred by an officeholder in connection with the performance of governmental and public service functions, we turn next to the question of whether the debt incurred by Solis for legal fees and which was paid by the Committee, was a personal debt.

¶ 24    Sigcho-Lopez contends that the legal fees paid by the Committee on behalf of Solis were a personal debt incurred in the defense of allegations of criminal conduct that he has characterized as public corruption. He argues that the Committee's payment of those fees was in satisfaction of that personal debt in violation of section 9-8.10(a)(3) of the campaign disclosure statute. The Committee argues that Solis's legal fees did not constitute a personal debt, as those fees were incurred "solely because of Solis' official position as an alderman and [Chicago City Council] committee chairman, and would never have been incurred if Solis was a private citizen."

¶ 25    In resolving the question of whether or not the legal fees that it paid on behalf of Solis constituted an expenditure for satisfaction of a personal debt, the Committee urges this court to adopt the federal "irrespective test" set forth in section 30114(b) of the Federal Election Campaign Act of 1971 (Federal Act) (52 U.S.C. § 30114(b) (2018)). The Federal Act prohibits the conversion of political campaign contributions to "personal use." 52 U.S.C. § 30114(b)(1) (2018). Section 30114(b)(2) of the Federal Act provides, in relevant part, that "a contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist

irrespective of the candidate's election campaign or individual's duties as a holder of Federal office." 52 U.S.C. § 30114(b)(1) (2018).

¶ 26     Application of the federal "irrespective test" is done on a case-by-case basis. See *Federal Election Comm'n v. Craig for U.S. Senate*, 816 F.3d 829, 841-42 (D.C. Cir. 2016). The payment of legal fees incurred irrespective of an individual's duties as an officeholder, such as fees associated with a divorce or a charge of driving under the influence of alcohol, is considered a personal use, irrespective of the fact that the underlying proceeding might have some impact on the officeholder's status. *Id.* at 837-39. Whereas, the payment of legal fees for an individual's defense of allegations relating directly to his or her duties as an officeholder are not considered a personal use. *Id.* Allegations that are related to an individual's duties as an officeholder would not exist if the individual had no official status. *Id.* at 839. Under that analysis, the payment of legal fees in defense of allegations of official misconduct is not a personal use. *Id.* at 842.

¶ 27     If, as the parties contend and we have found, the prohibition against the payment by a political committee in satisfaction or repayment of debts set forth in section 9-8.10(a)(3) of the campaign disclosure statute refers only to personal debts, then there must be a test to determine if a debt is personal. We conclude, as the Committee argues, that the federal "irrespective test" is the appropriate test to resolve the issue. Allegations of misconduct in the discharge of an officeholder's official duties would not exist independent of the individual's status as an elected official. The payment of legal fees incurred in defense of such allegations by a political committee can, therefore, qualify as an expenditure to defray a reasonable expense of an officeholder in connection with the performance of a governmental function as permitted pursuant to section 9-8.10(c) of the campaign disclosure statute.

¶ 28     In this case, Sigcho-Lopez has repeatedly asserted that the legal fees that the Committee paid on behalf of Solis were incurred in defense of "allegations of public corruption." Acts of public corruption do not exist irrespective of the accused's status as a public official. Solis was an elected alderman of the City of Chicago and the chairman of a city council committee. Allegations of public corruption on his part relate directly to his duties as an officeholder. Applying the "irrespective test," the legal fees that he incurred in defense of those allegations were not a personal debt, and the Committee's payment of those fees was not an expenditure prohibited by section 9-8.10(a)(3) of the campaign disclosure statute.

¶ 29     The essential inquiry in this case is whether Sigcho-Lopez's complaint is facially and legally justified. The Board was required to apply the campaign disclosure statute to the facts presented at the closed hearing before the hearing officer to determine whether the complaint was filed on justifiable grounds. *Cook County Republican Party*, 232 Ill. 2d at 245. The inquiry presents a mixed question of fact and law that we review for clear error. *Id.*; *Cinkus*, 228 Ill. 2d at 211.

¶ 30     In his report, the hearing officer found that "money spent on defenses as presented in this case can be an acceptable use of campaign funds *** [and] these types of expenditures can be made." He recommended that Sigcho-Lopez's complaint "be found not to have been filed on justifiable grounds and [that the] ***complaint be dismissed." On February 18, 2020, the Board's general counsel concurred with the hearing officer's recommendations, and on March 19, 2020, the Board issued its final order, adopting the recommendations of its general counsel and the hearing officer and dismissing Sigcho-Lopez's complaint, finding that the complaint was not filed on justifiable grounds.

¶ 31 Based upon the foregoing analysis, we conclude that the dismissal of Sigcho-Lopez's complaint and the findings of the hearing officer supporting that dismissal, which were unanimously adopted by the Board, are not clearly erroneous, and as a consequence, we affirm the Board's final order, dismissing Sigcho-Lopez's complaint.

¶ 32 Affirmed.